# GRIFFIN *v.* STATE

[No. 6, September Term, 1963.]

*Decided October 8, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Milton B. Allen,* with whom was *Llewellyn W. Woolford* on the brief, for appellant.

*Stuart H. Rome, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney,* and *Andrew J. Graham, Assistant State's Attorney,* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

After being convicted of, and sentenced for, violating the lottery laws (Code [1957], Article 27, Sections 356, *et seq.,*) by the Criminal Court of Baltimore, Griffin appeals.

He contends: (1) that the incriminating evidence produced by the State was procured under an invalid general warrant; and (2) that the search of his person was unreasonable because it was conducted while he was being detained under an illegal arrest (both (1) and (2) in violation of Article 26 of the Maryland Declaration of Rights and the Fourth Amendment of the Constitution of the United States).

After obtaining from Judge Foster a search warrant based upon probable cause that the lottery laws were being violated and that appellant had certain of the gambling paraphernalia upon his person, the police located Griffin. He was shown the search warrant and asked if he wanted to read it; he replied that he did not. He was then arrested and taken to the police station, where a search of his person revealed lottery slips concealed in his clothing. Upon questioning, he stated he had been "writing numbers." Before his trial he moved to quash the search warrant.

It will be unnecessary to set forth the search warrant in full. It commanded a police officer, with necessary and proper assistants, "(b) to search the person and clothing of the said previously named or described person(s) [one of the two being the appellant], (c) to search all other persons who may be par-

ticipating in said criminal activities; and seize all paraphernalia used in or incident to the operation or conduct of said criminal activities."

## I

The appellee argues the appellant has "no standing" to contest certain aspects of the search warrant that do not appertain to him personally. We find it unnecessary to consider the proposition at length; for the purposes of this case, we shall assume, without deciding, that appellant has standing to challenge all portions of the search warrant, as the warrant and search made under it were, we think, valid.

Appellant's challenge to the indictment under his contention number one is triple edged. First, he argues that the search warrant was defective in that it contained no "limitation as to time and place for its execution." The short answer to this is that Code (1962 Cum. Supp.), Article 27, Section 551, provides that any search or seizure made under authority "of such [a] search warrant" shall be made within fifteen calendar days from the date of its issuance, and, if not executed within that period, the warrant shall be null and void. We think, and therefore hold, that a period of fifteen days is a reasonable time to allow for the execution of a search warrant. Cf. *Bell v. State,* 200 Md. 223, 88 A. 2d 567. And the warrant was not vulnerable because it failed to specify the place where it had to be executed. It directed the search of persons—not places; hence, since the appellant was properly described therein, the warrant could be validly executed anywhere within the limits of Baltimore City, *Dow v. State,* 207 Md. 80, 113 A. 2d 423, without an express provision therein limiting its execution to the City of Baltimore. *Asner v. State,* 193 Md. 68, 65 A. 2d 881.

The second and third reasons assigned as to why the warrant was invalid may be considered together. Appellant states that the "general commands" to arrest and search all other persons "who may be participating in said criminal activities," and the "blanket order to seize any evidence used in, incident to, or which pertains to the operation of said criminal activities" render the warrant a general one proscribed by the above named constitutional provisions; consequently the search of his person

was unreasonable and the evidence obtained thereby was inadmissible.

This argument completely overlooks the fact that the warrant herein described the appellant and another individual, and the sufficiency of said descriptions is not here challenged. For the purposes of this opinion, it will not be necessary to relate the history of search warrants or general warrants.[1] It is a matter of common knowledge that search warrants originally were used to search for stolen articles. In the course of time, the purposes for which they may be issued have been implemented by the Legislature. At the time Judge Foster issued the warrant in the instant case, Code (1962 Cum. Supp.) Article 27, Section 551, explicitly authorized, under stated circumstances, the issuance of such warrants for the search of a person provided he was named or described "with reasonable particularity." This Court has approved warrants of this character. *Wilson v. State*, 200 Md. 187, 88 A. 2d 564; *Dow v. State*, 207 Md. 80, 113 A. 2d 423; *Giordano v. State*, 203 Md. 174, 100 A. 2d 31. And it has specifically held that general provisions to arrest and search not only named or described individuals but also others who are found to be participating in the unlawful activities named in the search warrant do not make the warrant objectionable as a general one. *Asner v. State, supra.* The provisions objected to are no more than a directive to the police to perform duties that they should perform in the absence of any command in the warrant to that effect; namely, that in the execution of a search warrant they should arrest all persons committing misdemeanors in their presence, and, after a valid arrest, they may search the arrestee as an incident thereto and seize any relevant evidence that pertains to the criminal activities of said arrestee.

The appellant makes one further argument under this heading that must be answered. He contends the directives in the warrant to the police to seize paraphernalia "used in or inci-

---

1. For a general discussion of the same, see: Asner v. State, supra; Siebert, "Freedom of the Press in England"; Hauson, "Government and the Press"; Marcus v. Search Warrant, 367 U. S. 717.

dent to the operation or conduct of said criminal activities," and "any evidence that pertains to said criminal activities" fail to give the executing officers an ascertainable standard for determining the property to be seized because "the definitive inadequacies of [these phrases] encompass the esoteric ramifications of the judicial concept of 'evidence' and the elusive qualities which are common among * * * the numerous and varied objects which 'pertain to' lotteries." He cites, among others, the cases of *U. S. v. Quantity of Extracts, Etc.,* 54 F. 2d 643 (D. C., S. D. Fla. 1931) and *Marcus v. Search Warrant,* 367 U. S. 717, relying very heavily upon the latter. We are unable to agree.

Both cases are, we think, distinguishable. In *Marcus,* the Supreme Court held that Missouri's procedures, which permitted, by *ex parte* proceedings, the search for, and seizure by, officers of "obscene" publications lacked the safeguards which due process demands to assure non-obscene material the constitutional protection to which it is entitled. The Court pointed out the complexity of the test as to what is and what is not "obscene" material, and rejected the assimilation of the Missouri Supreme Court of "obscene literature" to "gambling paraphernalia" and "gambling implements." The majority opinion of the Supreme Court did not reach a conclusion that the warrant involved therein was a "general one," but based its decision on a violation of the First Amendment, as made applicable to the States by the Fourteenth.

In *Quantity of Extracts, Etc.,* an affidavit for a search warrant recited that within described premises "there is located certain property *designed for use* in the unlawful manufacture of intoxicating liquor, *which is being used* as a means of committing a * * * violation of the National Prohibition Act * * *." (Emphasis ours). The search warrant followed the affidavit in the description of the place to be searched and the property to be searched for, and directed a seizure of "said property." The Court held the power to determine, without guide or limitation, what property was "designed for use" and "which [was] being used as a means of" violating the law should not be so broadly delegated to the executing officer. It recognized that the Fourth Amendment only requires reason-

able particularity and certainty as to the identity of the property to be searched for and seized, but held the warrant conferred upon the executing officer *"carte blanche* to determine what property was 'designed for use' and was 'being used' " in the unlawful manufacture of liquor. It will be noted that the warrant did not require that the officers find any "criminal activities" at the place searched, or that the property "which is being used" in violation of the law be, at the time of the execution of the warrant, in use in violation of law, or that it be used in violation of law at the place searched.

We hold that the commands of the warrants in the case at bar to search certain described persons, to arrest all persons participating in "said criminal activities" (violations of the lottery laws), to seize all paraphernalia used in or incident to the operation and conduct of said criminal activities, and any evidence that pertains thereto were reasonable and proper directives. They describe with reasonable particularity and certainty the property to be searched for and seized, so as to satisfy both the Maryland and Federal Constitutions. A command to seize paraphernalia used in or incident to the operation of a numbers lottery is comparatively plain and simple when compared with the intricate and complicated order to seize all "obscene" publications. The commands, as we have stated them above, were such as to be readily understood and properly interpreted by the executing officers, and they formed intelligible guides and standards for their conduct, so that, if adhered to by the officers, the constitutional rights of no one would be violated.

## II

The appellant next contends that his arrest "prior to [his] search and without any crime having been committed in the arresting officer's presence "clearly made such an arrest unlawful; hence, the evidence obtained as a result of the subsequent search of his person was inadmissible. He cited *Gattus v. State,* 204 Md. 589, 105 A. 2d 661.

In *Gattus,* the main question involved was whether a search warrant issued in Baltimore City could be validly executed in Baltimore County. The Court held that it could not. There was a directive in the warrant that if gambling paraphernalia were

revealed as a result of the search, then the officers should bring the body of the "described" white man before the subscriber, a judge of the Supreme Bench of Baltimore City, or some Police Justice of said City, to be dealt with according to law. The State contended that this directive constituted an arrest warrant; therefore, under the provisions of Section 530 of the *Charter & Public Local Laws of Baltimore City* (Flack 1949 Ed.), Gattus could be lawfully arrested in any part of the State. The Court rejected this contention, and held that the above command was not a valid arrest warrant, for the simple reason that it did not charge the commission of any crime, cf. Code (1962 Cum. Supp.), Art. 52, Section 21; and that the arrest authorized was a conditional one (conditioned of course, upon the search revealing the property described in the search warrant, Section 551, *supra*). We reaffirm these holdings, and there is nothing in the reaffirmation that invalidates the arrest or the search in the instant case.

Searches of the persons of individuals have been authorized in this State at least since 1939 (Section 551, *supra*). The warrant here directed the officer "to search the person and clothing of the said previously * * * described person [the appellant]." We know of no practical method of executing such a command, except perhaps on those occasions when one alleged to be violating the criminal law would quietly and supinely submit and consent to a search of his person,[2] other than by arresting the person to be searched. As the search warrant itself must be founded upon probable cause, we do not think that conditional arrest for the purpose of executing the warrant is illegal or unreasonable. And we find nothing unreasonable in the police taking appellant to a nearby station house to conduct the search. It was in December, and the nature of the evidence named in the warrant was such that it could be concealed in his shoes or clothing close to his body. It would not have been conducive to public morals and probably quite embarrassing to him to undress him on the city streets, and to disrobe him in the police car may have endangered his health. We held in *Williams v. State*, 229 Md. 329, 182 A. 2d 783, that a search made under

2. Compare Armwood v. State, 229 Md. 565, 185 A. 2d 357.

very similar circumstances was a valid one. Of course, the arrest and search must both be made within the territorial jurisdiction of the official who issued the search warrant; and if the search fails to disclose any property described in the search warrant, then the police would have no right to continue the detention of the "named or described" person under the authority of the search warrant. As indicated above, the search and seizure made herein were, we think, reasonable; hence they are not violative of either Article 26 of our Declaration of Rights nor of the Fourth Amendment to the Federal Constitution. As was stated by the Supreme Court in the recent case of *Ker v. California*, 10 L. Ed. 2d 726, 728: "The States are not thereby [the decision is *Mapp v. Ohio*, 367 U. S. 643] precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who had standing to complain."

We have examined the other cases cited by the appellant under this heading, but we find nothing in them that conflicts with what we have stated herein.

*Judgment affirmed, with costs.*