STATE OF NEW JERSEY, IN THE INTEREST OF L.Q.,
JUVENILE–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 19, 1989—Decided November 2, 1989.

*R.P.C.* 1.6(c)(2), a lawyer may reveal information to the extent the lawyer reasonably believes necessary:
 (2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, or to establish a defense to a criminal charge, civil claim or disciplinary complaint against the lawyer based upon the conduct in which the client was involved.
 A lawyer is permitted to disclose otherwise confidential information which he reasonably believes necessary to support a claim against a client. *ABA/BNA Lawyers' Manual on Professional Conduct,* 55:701. *See First Federal Savings & Loan v. Oppenheim,* 110 *F.R.D.* 557, 561 (S.D.N.Y.1986); *see also* 2 Weinstein's *Evidence,* ¶ 503(d)(3)[01] at 503–72.
 Very recent authority for exceptions to the privilege where a bona fide compensation-based dispute exists between attorney and client is found in *Restatement 3d, The Law Governing Lawyers,* § 117 at 53 (Tentative draft # 2, April 7, 1989).
 A lawyer may use or disclose confidential client information to the extent that the lawyer reasonably believes necessary in order to permit the lawyer to resolve a dispute with the client concerning compensation or reimbursement that the lawyer reasonably claims is due to the lawyer.
There should be a "proportionate and restrained use or disclosure." *Id.* at Comment d. *See Doe v. A Corp.,* 709 *F.*2d 1043, 1044 n. 1 (5th Cir.1983), where in a suit by a former house counsel against former employer-client based on pension and life insurance plan claims, on defendant corporations' motion, the court ordered the record sealed; the suit was to be prosecuted without disclosing the name of either party and confidentiality otherwise maintained. The *Restatement's* Tentative Draft also recommends exceptions to the privilege for "Client Crimes and Fraud," § 132 at 238 and for "Lawyer Self–Protection," § 133 at 252. The latter section concludes that the privilege does not apply to a communication relevant and appropriate for a lawyer to employer "(1) to resolve a dispute with a client concerning compensation or reimbursement that the lawyer reasonably claims is due to the lawyer from the client."

Before Judges DEIGHAN, R.S. COHEN and BROCHIN.

*Theresa Yvette Kyles*, Assistant Public Defender, argued the cause for appellant (*Alfred A. Slocum*, Public Defender, attorney).

*Kevin Walker*, Assistant Prosecutor, argued the cause for respondent (*Samuel Asbell*, Camden County Prosecutor, attorney; *Joel H. Aronow*, Assistant Prosecutor, on the letter brief).

The opinion of the court was delivered by

R.S. COHEN, J.A.D.

The Family Part adjudicated L.Q. to be a juvenile delinquent for possessing cocaine, and imposed a three-year probationary term. L.Q. appealed, arguing that his motion to suppress should have been granted because the evidence against him was illegally seized. We disagree, and therefore affirm.

A search warrant was issued to search a residence at 331 Grant Street, Camden, and "all persons found therein reasonably believed to be connected with the said property and investigation." The warrant was issued on the strength of the affidavit of Anthony Galiazzi, a Camden Detective with long experience in drug investigations and prosecutions. Galiazzi stated that a reliable confidential source told him that an Hispanic woman was selling cocaine from inside a residence located at 331 Grant Street. Galiazzi "established a sporadic surveillance" of the house:

During these periods of observation, numerous persons were seen as they approached the front of the residence, knocked on the front door and entered inside. These persons would usually stay for a short period of time, then exit the residence and leave the area. It has been the experience of the undersigned the number of people going and coming from the house is typical of locations where narcotics are being illegally sold.

Galiazzi then set up a successful controlled cocaine purchase at the house. He asked for a warrant authorizing a search between 8:00 a.m. and midnight, the hours when, he said, cocaine sales took place. He also asked for a "no-knock" warrant because

"[l]ook-outs" are used in the neighborhood to warn of police activity in the area. This was observed by the undersigned during my surveillance.

Police reports revealed that officers who executed the warrant in the mid-afternoon found an Hispanic woman and a man in the house. Small quantities of apparent cocaine were found, not on their persons, but in two different rooms. Then L.Q. entered the house. A report completed eight months after the incident said L.Q. tried to leave when he saw the police but was stopped. A search of a bag L.Q. was carrying turned up seven small packages of cocaine.

With the motion to suppress were submitted the warrant, the affidavit of Detective Galiazzi, and the police reports. Neither side offered testimony or other evidence. The judge held that the State had demonstrated probable cause, in its warrant application, sufficient to justify searching not only the house but also L.Q.

This case presents the problem of the lawfulness of a warrant to search unnamed persons who are already present or who arrive during the search of a place. The New Jersey Supreme Court addressed the problem in *State v. Sims*, 75 *N.J.* 337 (1978) and *State v. DeSimone*, 60 *N.J.* 319 (1972). In *DeSimone*, warrants were issued to search six automobiles on the thesis that they were being used to transport and collect illegal lottery slips. The warrants directed a search of the cars "and persons found therein." The Supreme Court concluded

that there was sufficient cause shown to believe that anyone found in the car was involved in the illegal activity.

The heart of the *DeSimone* opinion was:

> On principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend upon the facts. A showing that lottery slips are sold in a department store or an industrial plant obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that is likely that everyone present is a party to the offense. Such a setting furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them.

> As to probable cause, it must be remembered that the showing need not equal a *prima facie* case required to sustain a conviction. No more is demanded than a well-grounded suspicion or belief that an offense is taking place and the individual is party to it. (Citations omitted). And, with regard to the Fourth Amendment demand for specificity as to the subject to be searched, there is none of the vice of a general warrant if the individual is thus identified by physical nexus to the on-going criminal event itself. In such setting, the officer executing the warrant has neither the authority nor the opportunity to search everywhere for anyone violating a law. So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment. The evil of the general warrant is thereby negated. [60 *N.J.* at 321–322].

In *Sims*, a warrant was issued to search a gasoline service station building on evidence of illegal lottery and bookmaking activities going on there. The warrant also authorized the search of any persons found in the building. During the search, Sims walked into the building and was searched. The Supreme Court ruled that it was not possible to conclude reasonably that anyone found in a service station open for legal business was involved in illegal gambling which also took place there. The Court thus held that the search did not satisfy *DeSimone*, and that defendant's motion to suppress should have been granted. *See also State v. Riggins*, 138 *N.J.Super.* 497 (Law Div.1976) (gambling activity in a public tavern was insufficient cause for a warrant to search all persons present).

We note parenthetically that the search of a person present can be supported by factors other than pre-existing probable cause to believe he is party to the crime. One possibility is that a person present may be frisked for weapons if there is a reasonable belief or suspicion that the particular person is armed. *See Ybarra v. Illinois,* 444 *U.S.* 85, 93–94, 100 *S.Ct.* 338, 343, 62 *L.Ed.*2d 238, 246–247 (1979); *State v. Grant,* 361 *N.W.*2d 243 (N.D.1985). Another possibility is that probable cause to search a particular person might arise out of his actions or appearance during a premises search, as, for instance, if he arrives at the door asking who will sign for a cocaine delivery. *See State v. Sims,* 75 *N.J.* at 352–355; *Patton v. State,* 148 *Ga.App.* 793, 252 *S.E.*2d 678 (1979); *State v. Halverson,* 21 *Wash.App.* 35, 584 *P.*2d 408 (1978). In the present case, one police report has L.Q. trying to leave the premises when he sees the police. We need not say whether that reaction itself provided probable cause to arrest and/or search him. The State did not so argue in the Law Division or here. We are also not faced with the issue of the detention of persons present while a search is conducted. *See Michigan v. Summers,* 452 *U.S.* 692, 101 *S.Ct.* 2587, 69 *L.Ed.*2d 340 (1981).

Here, the warrant did not say "all persons present." Instead, it authorized the search of anyone found on the premises "reasonably believed to be connected with the said property and investigation." Professor La Fave argues that such a warrant does not authorize the search of any person, but only invites an on-the-spot police decision whether a person's presence at the time and in the circumstances creates the reasonable belief that he is involved.

Thus, the inclusion of such a command in a search warrant does not invalidate it, but any personal searches which are subsequently made cannot be upheld on the ground that they were based upon a prior probable cause determination by a magistrate. Rather, the question is whether the police themselves at the time of the search had the requisite probable cause. [2 La Fave, *Search and Seizure,* § 4.5(e), p. 233 (2d Ed.1987)].

*See Beeler v. State,* 677 *P.*2d 653 (Okl.Cr.1984); *Griffin v. State,* 232 *Md.* 389, 194 *A.*2d 80 (1963).

A warrant should be read in a commonsensical manner to achieve its lawful purposes. *See State v. Novembrino,* 105 *N.J.* 95, 108–109 (1987). A judge would not intentionally issue a warrant that ordered the police to do only what the law already required. It is not sensible to read a warrant to make such an empty and purposeless order, unless the words leave no choice. If we find probable cause to search all persons present, no purpose is served by our assuming the magistrate did not find it, especially if, as La Fave says, the police may act on it without the authority of a warrant. It is always preferable to submit the evaluation of probable cause to a neutral magistrate.

Where sufficient grounds are presented to the issuing judge for a warrant to search not only premises but also all persons present, we see no reason to read the warrant so begrudgingly as to withhold the authority that was available for the judge to grant. Our view is consistent with *Samuel v. State,* 222 *So.*2d 3 (Fla.1969) and *People v. Easterbrook,* 43 *A.D.*2d 719, 350 *N.Y.S.*2d 442 (1973), in both of which, warrants to search persons on the premises either "found to have such property in [their] possession" (*Easterbrook*) or "suspected of being connected with" the illegal operation (*Samuel*) were read as the equivalent of warrants to search all persons present. La Fave's objection is that the the judge left it to the executing officers to decide whom they had legal grounds to search. We do not find that problem to exist where the facts shown in the application justify an all-persons-present warrant and there is no reason to believe the judge intended to issue a narrower, illegal or meaningless order. Unless the words or the context requires, we believe that a sensible reading of the warrant, supported by probable cause, should be made to authorize searching all persons present.

Here, therefore, the "persons reasonably believed" language is the equivalent of a warrant to search all persons found on the premises other than those whose presence is

innocently explainable on its face, such as a uniformed postman or utility meter reader. We thus turn to the question whether an all-persons-present warrant was justified by the information contained in the warrant application. We examine the question in the light of *DeSimone*'s standard that probable cause exists if there is a well-grounded suspicion or belief that an offense is taking place and that unknown persons found on the premises are party to it.

The warrant application showed that a reliable confidential source reported ongoing cocaine sales at the premises. The report was strongly bolstered by a sporadic surveillance during which numerous persons knocked and entered the premises, usually stayed for short periods of time, and then left the house and the area. That is behavior typical of places where drugs are retailed. A look-out to warn of police activity in the neighborhood was observed. There was a controlled purchase made at the premises.

The evidence was sufficient to create a well-grounded suspicion or belief that numerous sales of CDS were being conducted in the premises.[1] Although the affidavit did not exclude the possibility of other activities on the premises, the description of the activity actually observed provided a firm foundation for the suspicion or belief that any person in the private premises was involved in the overt unlawful activity of sale and possession of cocaine. Such a suspicion or belief is not limited to persons already there when the police arrive, but reasonably extends to a person who enters the premises during the search. Such a person is probably a supplier, a subdealer or a customer. The criminality of the supplier and subdealer are obvious. Even the customer could already be carrying CDS or paraphernalia. At the least, there is probable cause to believe that the

---

[1] It would have been even stronger if the affidavit had revealed the size of the house, length of the surveillance and the numbers of people entering and leaving after a brief stay, and the number of persons, if any, who entered for apparently other purposes.

customer is attempting to violate the laws prohibiting possession and use of controlled dangerous substances. *See N.J.S.A.* 24:21–24 (repealed); *State v. Crawley,* 90 *N.J.* 241, 252 (1982). Attempting to possess CDS is not an illusory offense. It is committed by a person who takes substantial steps toward making a purchase. *See N.J.S.A.* 2C:5–1a(3); *see United States v. Williams,* 704 *F.*2d 315 (6 Cir.1983); *United States v. Manley,* 632 *F.*2d 978 (2 Cir.1980); *People v. Lev,* 166 *Ill.App.*3d 173, 117 *Ill.Dec.* 1, 519 *N.E.*2d 1168 (1988); *State v. Frederickson,* 92 *Or.App.* 223, 757 *P.*2d 1366 (1988); *People v. Duprey,* 98 *A.D.*2d 110, 469 *N.Y.S.*2d 702 (1983).

■ We hold that a warrant to search premises used for the continuing retail sale of CDS may authorize the search of all persons already present or arriving if the search is conducted at a time when sales ordinarily take place, if the premises are not of a sort likely to be also frequented by the public for lawful purposes, and if, as a result, a person who is in the premises when the police enter or arrives there during the search is likely to be a party to the unlawful activity.

Our holding is consistent with the conclusions reached by other jurisdictions. In *Commonwealth v. Smith,* 370 *Mass.* 335, 348 *N.E.*2d 101 (1976), an all-persons-present provision in a search warrant was upheld where the apartment to be searched was used for numerous CDS sales to people who came and went, and where "it was permissible to conclude that it was probable that any person in the apartment was a participant in the traffic in heroin there." 348 *N.E.*2d at 106. *People v. Betts,* 90 *A.D.*2d 641, 456 *N.Y.S.*2d 278 (1982) is to the same effect. There, an all persons-present warrant was upheld in the following circumstances:

Significantly, the premises involved, a basement apartment, were private and, therefore, less likely to contain innocent bystanders. Police surveillance, carried out over several days, corroborated in every detail information supplied by a reliable informant that the occupants were vigorously trafficking in drugs. [456 *N.Y.S.*2d at 279].

*Commonwealth v. Graciani,* 381 *Pa.Super.* 626, 554 *A.*2d 560 (1989) also approved an all-persons-present provision in a warrant to search a private residence where repeated cocaine sales were made to briefly visiting customers. To the same effect is *State v. Hinkel,* 365 *N.W.*2d 774 (Minn.1985), and *Gonzales v. State,* 761 *S.W.*2d 809 (Tex.App.1988).

We further hold that if probable cause is presented to search all persons present or arriving during the search of the site of ongoing CDS sales, the authority to search all such persons will ordinarily be granted by warrant language like "all persons found therein reasonably believed to be connected" with the illegal activity. Unless the context demands it, the quoted words should not be read to confer unconstitutionally unlimited authority or no authority at all on executing officers, but rather to exclude persons whose presence is innocently explainable on its face.

Affirmed.