**James Conroy BETTS, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–5757.

Court of Appeals of Alaska.

July 12, 1996.

Patrick W. Conheady, Olmstead & Conheady, Juneau, for Appellant.

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

James C. Betts was convicted of one count of misconduct involving a controlled substance in the fourth degree, in violation of AS 11.71.040(a)(3)(A). On appeal, Betts challenges the validity of the search warrant pursuant to which the evidence against him was seized. We affirm.

On August 4, 1994, Juneau law enforcement officers were alerted to the possibility of drug trafficking at a trailer located at space 50 in the Sprucewood Trailer Park, Juneau. The officers promptly applied for and were issued a warrant to search the trailer and any individuals on the premises for drugs and drug paraphernalia. The warrant was executed approximately thirty minutes after it was issued. Upon entering the trailer, the officers encountered and searched several individuals, including Betts. Betts was found to be in possession of a small quantity of cocaine and, as a result, was charged with misconduct involving a controlled substance in the fourth degree.

Betts moved to suppress the evidence against him, challenging the validity of the search warrant. He argued that the warrant was flawed in authorizing officers to search individuals on the premises. Superior Court Judge Walter L. Carpeneti rejected this argument and denied Betts' suppression motion. On appeal, Betts renews this argument.

A warrant authorizing the search of particularly described premises and "any persons therein" is not *per se* impermissible. 2 Wayne R. LaFave, *Search and Seizure* § 4.5(e), at 545–46 (3d ed. 1996). "On principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend upon the facts." *State v. DeSimone*, 60 N.J. 319, 288 A.2d 849, 850 (1972). The guiding principle here, as in other areas of search and seizure law, is probable cause; the rule in such cases has been succinctly stated as follows: "So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment." *Id.*

LaFave concurs with this statement of the rule:

> Unquestionably, the *DeSimone* rationale is correct. A search warrant authorization to search all persons found within a specifically described place is not lacking in particularity in the sense that the executing officer will be unable readily to determine to whom the warrant applies. Rather, the question is whether there is sufficient particularity in the probable cause sense, that is, whether the information supplied the magistrate supports the conclusion that it is probable anyone in the described place when the warrant is executed is involved in the criminal activity in such a way as to have evidence thereof on his person. If the evidence tendered to the magistrate supports such a conclusion, then the search-all-persons-present warrant is unobjectionable.

*Search and Seizure,* § 4.5(e), at 546–57 (footnotes omitted).

In the present case, the superior court issued a thoughtful decision carefully analyzing the circumstances of Betts' case

and applying the correct rule of law. The court concluded that good reason existed to believe that all individuals present in the trailer upon execution of the challenged warrant would probably have drugs or drug paraphernalia on their persons. Our review of the briefs and the record convinces us that the superior court's factual findings are not clearly erroneous and that its legal analysis is sound. For the reasons stated in the superior court's decision, relevant portions of which are appended hereto, we conclude that the court did not err in denying Betts' motion to suppress.

The conviction is AFFIRMED.

## APPENDIX

IN THE SUPERIOR COURT FOR
THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT
AT JUNEAU

STATE OF ALASKA, Plaintiff,

v.

JUANITA JEAN WEBBER, JAMES
CONROY BETTS, ROBERT CARL
SWANSON, Defendants.

Case No. 1JU–S94–1304 CR

Case No. 1JU–S94–1305 CR

Case No. 1JU–S94–1306 CR

*ORDER DENYING MOTIONS
TO SUPPRESS*

. . . .

## STATEMENT OF FACTS

The relevant facts are as follows:

On August 4, 1994, at about 10:10 p.m., Alaska State Trooper Sergeant Dan Vanderweele and Juneau Police Department Investigator Stan Herrera contacted Magistrate John W. Sivertsen, Jr., via telephone. Vanderweele and Herrera asked Magistrate Sivertsen to issue a search warrant that permitted them to search the residence at #50, Sprucewood Trailer Park and any individuals within the residence for drugs and drug paraphernalia. Sprucewood is located at 9551 Stephen Richards Drive in Juneau, Alaska.

To justify issuance of the search warrant, Vanderweele relied primarily on the statements of a Sprucewood resident named David Biddinger who lived at #51, Sprucewood, which is next door to #50, Sprucewood.

Vanderweele testified under oath that he had talked to Biddinger on the telephone about an hour earlier, at about 9:00 p.m. on August 4. Biddinger told Vanderweele that, within the previous 10 minutes, the woman who lived at #50, Sprucewood had asked Biddinger's mother to come to her residence. At the time, Biddinger's mother had just arrived at Biddinger's residence and was exiting her vehicle. Biddinger told Vanderweele that he did not know the woman's name, but did know that a man named "Bob" lived at the same residence. Vanderweele and Herrera subsequently relied on police and intelligence records to identify the residents of #50, Sprucewood as Webber and Swanson.

After Biddinger's mother went to the Webber/Swanson residence and returned, Biddinger told Vanderweele that she was "upset". According to Vanderweele's testimony, Biddinger's mother informed Biddinger that Webber had offered to sell her marijuana at the doorway of the residence. Vanderweele further testified that Biddinger's mother also informed Biddinger that she saw cocaine and marijuana inside the Webber/Swanson residence. In addition, Vanderweele testified that Biddinger's mother told Biddinger that she saw "several dishes of white powder" inside the trailer and people "sitting around snorting powder off the dish". Biddinger further told Vanderweele that he has "seen lots of traffic coming and going" from #50, Sprucewood in the past. As he spoke with Vanderweele, Biddinger observed a vehicle approach #50, Sprucewood.

To show that Biddinger's statements were credible and reliable, Vanderweele informed Magistrate Sivertsen that Biddinger was neither serving as a government informant, nor working off criminal charges in exchange for the information that he had provided.[1] Biddinger had, however, advised Vanderweele

---

1. Indeed, Vanderweele testified that he had never previously spoken with Biddinger.

that he had engaged in illegal activity in the past. Vanderweele informed Magistrate Sivertsen that a criminal record check on Biddinger revealed that he had prior convictions for burglary, larceny, and alcohol-related offenses.

In addition to conveying Biddinger's statements, Vanderweele provided several other pieces of information to support the issuance of a search warrant. Vanderweele testified that an unknown person informed law enforcement officials on March 17, 1980, that Swanson was selling cocaine, marijuana, and mushrooms from his residence. At that time, Swanson lived at 7380 North Douglas Highway.

Vanderweele further testified that on April 30, 1990, a state-paid informant code-named N–428 had advised law enforcement officials that Swanson was engaged in the cocaine trade, and that Swanson had told him that he was obtaining his cocaine from a Juneau fisherman named "Bear". Vanderweele testified that on December 12, 1990, N–428 purchased a quarter ounce of cocaine from Swanson. When Magistrate Sivertsen questioned Vanderweele about N–428's reliability, Vanderweele testified that N–428 had been "truthful and reliable" during his recent work as an undercover agent for the Ketchikan Police Department. According to Vanderweele's testimony, N–428's undercover narcotics purchases had enabled Ketchikan Police to obtain search warrants, *Glass* warrants, and arrest warrants.

Vanderweele further testified that an unidentified caller advised law enforcement officials on September 21, 1991, that Swanson and Webber were "dealing drugs". According to Vanderweele, the caller further advised that "there was lots of traffic going in and out of their place". Vanderweele also testified that the caller advised that Webber was "using narcotics" and was "all drugged out".

In addition, Vanderweele testified that on March 22, 1994, Juneau attorney Fred Baxter advised law enforcement officials that members of Webber's family had told him that she was living with Swanson and using heroin. According to Vanderweele, Baxter also stated that Webber's family believed that she had traveled to Anchorage on March 16, 1994, to obtain cocaine and bring it to Juneau. Vanderweele also testified that Baxter said that Webber's family knew that she had visited a medical clinic where doctors found needle marks on her arms.

Vanderweele also testified that an anonymous caller had informed law enforcement officials on July 27, 1994, that people were selling cocaine from #50, Sprucewood. The anonymous caller further advised that he believed that "a new shipment of drugs was getting into the trailer there on an estimation of every two weeks."

Herrera testified that an immediate search warrant was required to prevent the dissipation of evidence.

Based on the testimony of Vanderweele and Herrera, Magistrate Sivertsen found that Biddinger and his mother had provided "credible" and "reliable" information. Magistrate Sivertsen then concluded that there was "probable cause to believe that the alleged offense of misconduct involving a controlled substance" had been or was being committed. Magistrate Sivertsen also concluded that it was reasonably certain that items of the alleged offense could be found at #50, Sprucewood. Magistrate Sivertsen then issued a telephonic search warrant at 10:40 p.m. that permitted law enforcement authorities to search #50, Sprucewood and any individuals on the premises for drugs and drug paraphernalia at anytime, day or night. Within 30 minutes of the issuance of the warrant, police officers entered #50, Sprucewood and searched the residence and its three occupants, Webber, Swanson, and Betts, for drugs. Evidence supporting the present indictment was found at that time.

. . . .

III. THE MAGISTRATE HAD PROBABLE CAUSE TO ISSUE A SEARCH WARRANT THAT PERMITTED LAW ENFORCEMENT OFFICIALS TO SEARCH ALL PERSONS PRESENT AT #50, SPRUCEWOOD FOR DRUGS AND DRUG PARAPHERNALIA.

. . . Betts contends that Vanderweele and Herrera presented "no reliable information

of any detail" from which the magistrate could find probable cause to issue a search warrant that permitted law enforcement officials to search Betts for drugs and drug paraphernalia. Betts relies primarily on *Beeler v. State,* 677 P.2d 653, 656 (Okla.Crim. App.1984), and on *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979), to bolster his position. In *Beeler,* the Oklahoma Court of Criminal Appeals stated:

> Where probable cause is the standard, a search or seizure of a person must be supported by probable cause particularized with respect to that person. That requirement may not be undercut by pointing to the coincidental existence of probable cause to search or seize another or to search the premises where the person may happen to be. *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979).

In the present case, the magistrate issued a warrant that authorized law enforcement officials to search any and all persons present at # 50, Sprucewood. An "all persons present" search warrant is valid where:

> [T]here is sufficient particularity in the probable cause sense, that is, whether the information supplied the magistrate supports the conclusion that it is probable anyone in the described place when the warrant is executed is involved in the criminal activity in such a way as to have evidence thereof on his person.

WAYNE R. LAFAVE, SEARCH & SEIZURE; A TREATISE ON THE FOURTH AMENDMENT @ 4.5(e), at 231 (2d ed. 1987). The magistrate had sufficient evidence to find probable [cause] to issue an "all persons present" search warrant for the following reasons. First, Vanderweele's testimony established that, within the previous 90 minutes, Biddinger's mother had seen "people snorting white powder" from dishes inside the residence. The testimony further established that Biddinger's mother believed that the white powder was cocaine.

Second, Vanderweele's testimony established that Webber and Swanson ... were selling drugs from their residence. Eight days prior to the issuance of the warrant, an anonymous caller had reported that people were selling cocaine from # 50, Sprucewood. The anonymous caller also reported that drugs were being brought to the residence approximately every two weeks. In addition, the testimony indicated that when Biddinger's mother went to the residence earlier that evening, Webber had offered to sell her marijuana. Lastly, Biddinger reported seeing "lots of traffic coming and going" from the residence in the past. In fact, Biddinger saw a vehicle arrive at the residence as he spoke with Vanderweele on the telephone.

Third, Vanderweele's testimony indicated that the listed residents of # 50, Sprucewood, Webber and Swanson, had a history of reported drug trafficking. As far back as 1980, an anonymous person informed law enforcement officials that Swanson was selling cocaine, marijuana, and mushrooms from his then residence at 7380 North Douglas Highway. In 1990, a reliable police informant had allegedly purchased a quarter ounce of cocaine from Swanson. In 1991, an anonymous caller advised law enforcement officials that Swanson and Webber were "dealing drugs" and that "there was lots of traffic going in and out of their place". In March, 1994, a Juneau attorney advised law enforcement officials that members of Webber's family had told him that she had traveled to Anchorage on March 16, 1994, to obtain cocaine and bring it back to Juneau. The attorney also reported that Webber's family told him that she was a heroin user.

The testimony indicated that the illegal activity at the residence was ongoing and overt and that the police were likely to find all persons in the residence participating in the sale and use of cocaine and marijuana. *Cf. State in Interest of L.Q.,* 236 N.J.Super. 464, 566 A.2d 223, 226 (Ct.App.Div.1989); *Gonzales v. State,* 761 S.W.2d 809, 811–12 (Tex.Ct.App.1988). Ironically, a case which is helpful to the analysis of this issue is *People v. Betts,* 90 A.D.2d 641, 456 N.Y.S.2d 278, 279 (N.Y.App.Div.1982). In that case, although the testimony did not eliminate the possibility of non-criminal participants being at the residence, the residence was "private and, therefore, less likely to contain innocent

bystanders." *Betts,* 456 N.Y.S.2d at 279; *contrast Ybarra,* 444 U.S. 85, 100 S.Ct. 338 (concerning search of business open to public). The New Jersey Supreme Court provided a good illustration of the distinction between public and private in *State v. DeSimone,* 60 N.J. 319, 288 A.2d 849 (1972). The court in *DeSimone* stated:

> A showing that lottery slips are sold in a department store or an industrial plant obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense.

*Id.* 288 A.2d at 850.

The present case involved a residence which is a trailer, which is much closer in size to a barn or a manhole than a department store or an industrial plant, and closer to the terms of restricted access as well. While it was possible that non-criminal participants in the activities within the trailer might exist, it was clearly private and less likely to contain innocent bystanders.

In addition, the "all persons present" warrant was preferable in this case because it is unreasonable to require law enforcement officials to specify the names of all individuals who might be in the residence at any one time. *See State v. Hinkel,* 365 N.W.2d 774, 776 (Minn.1985); *Betts,* 456 N.Y.S.2d at 279. Furthermore, the "all persons present" warrant prevented persons from hiding cocaine and marijuana evidence in their clothing. *See Commonwealth v. Graciani,* 381 Pa.Super. 626, 554 A.2d 560, 562 (1989). This court thus concludes that the magistrate had sufficient evidence to find probable cause to issue a search warrant that authorized the search of any and all persons, including Betts, within the residence at #50, Sprucewood.