**Flora M. DAVIS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Rebecca L. FOX, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Earl J. THRONSEN, Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. A 6016, A–6025 and A–6036.**

Court of Appeals of Alaska.

May 9, 1997.

Rehearing Denied June 3, 1997.

Robert B. Downes, Downes, MacDonald, & Levengood, Fairbanks, for Appellant Davis. Susan Downie, Assistant Public Advocate, Fairbanks, and Brant McGee, Public Advocate, Anchorage, for Appellant Fox. Thomas E. Fenton, Fairbanks, for Appellant Thronsen.

James L. Hanley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and MANNHEIMER, J., and JOANNIDES, District Court Judge.*

MANNHEIMER, Judge.

Each of the appellants in this case visited a Fairbanks residence while the police were executing a search warrant for the premises. The officers searched each of the appellants as they arrived, and the officers found cocaine on each appellant.

Each of the appellants was indicted for possession of cocaine (fourth-degree misconduct involving a controlled substance), AS 11.71.040(a). Following their indictment, Davis, Fox, and Thronsen sought suppression of the cocaine; they argued that the police had lacked authority to search them, either because the warrant was invalid or because the warrant did not empower the police to search visitors who arrived during the execution of the warrant. The superior court rejected these contentions, and each of the appellants was subsequently convicted. They now appeal, renewing their arguments in favor of suppression. We affirm the appellants' convictions.

On October 12, 1994, a Fairbanks magistrate issued a search warrant for a residence at 1550 Old Pioneer Way; the magistrate found that there was probable cause to believe that the residence was the site of an ongoing "crack" cocaine selling operation. Besides authorizing the police to search for drugs, drug paraphernalia, and money, the warrant also authorized the police to search "[a]ny persons on the premises at the time of service of the search warrant" for evidence of possession and/or distribution of controlled substances.

Armed with the warrant, the police arrived at the house at approximately 9:45 that evening. As the officers were arriving, Earl J. Thronsen, Jr., approached the house, opened a screen door, and walked into the arctic entry—an enclosed vestibule leading to the interior front door of the residence. Standing in the arctic entry, Thronsen knocked on the interior front door. When someone inside the house opened the door for Thronsen, the police ran up and announced that they were there to serve a search warrant. The officers brought Thronsen inside the residence and searched him. This search revealed two bindles of cocaine.

Approximately one hour later, while the police were still searching the house, Flora M. Davis came into the arctic entry and knocked on the interior front door. The officers opened the door but did not immediately reveal their identity; they either invited Davis inside or allowed her to enter. Davis was then searched; the search yielded three pipes used for smoking crack cocaine.

Rebecca L. Fox also arrived at the house while the search was proceeding. She too came into the arctic entry and knocked on the interior front door; when she entered the residence, the officers searched her. This search yielded a glass pipe containing cocaine.

■ On appeal, Thronsen contends that the search warrant was an unconstitutional "general warrant" because it authorized the search of any and all persons who might be present on the premises at the time the warrant was served.[1] Thronsen's argument is not based on the facts of this case (the contents of the warrant application presented to the magistrate); rather, Thronsen argues that, as a general matter, courts lack the authority to issue this kind of warrant.

Thronsen's contention is governed by this court's recent decision in *Betts v. State*, 920 P.2d 763 (Alaska App.1996). In *Betts*, we held that warrants authorizing the police to search "any and all persons present" are not *per se* unconstitutional. *Id.* at 764. Such a warrant is supportable if the warrant application provides probable cause to believe "that all persons present [on the premises] upon execution of the ... warrant would ... have drugs or drug paraphernalia on their per-

---

* Sitting by assignment of the chief justice made pursuant to Article IV, Section 16 of the Alaska Constitution.

1. Fox also raises this argument on appeal. However, she did not raise this issue in the superior court. She is therefore precluded from relying on this argument on appeal. *See Moreau v. State*, 588 P.2d 275, 279–280 (Alaska 1978).

sons." *Id.* at 765. We therefore reject Thronsen's attack on the warrant.

■ Davis, Fox, and Thronsen all argue that, even assuming the validity of the warrant, the police were not authorized to search them. Although the warrant authorized the police to search all persons "on the premises", the three appellants contend that they were not "on the premises" until they entered the main living area. The appellants point out that they entered the main living area at the invitation (or, in Thronsen's case, at the direction) of the police.

We conclude, however, that the appellants' argument is based on a mistakenly narrow interpretation of the term "premises". In this case, the arctic entry was part of the "premises" of the residence. We derive this result from cases construing the law of burglary. When defining the "premises" of a dwelling for purposes of burglary, a dwelling includes an attached enclosed or screened-in porch. *See Johnson v. Commonwealth*, 875 S.W.2d 105, 106–07 (Ky.App.1994); *Commonwealth v. Jackson*, 401 Pa.Super. 426, 585 A.2d 533, 534–35 (1991); *State v. Lawrence*, 572 So.2d 276, 278–79 (La.App.1990); *People v. Wiley*, 169 Ill.App.3d 140, 120 Ill. Dec. 433, 435–36, 523 N.E.2d 1344, 1346–47 (1988); *State v. Watts*, 76 N.C.App. 656, 334 S.E.2d 68, 70 (1985); *People v. Lewoc*, 101 A.D.2d 927, 475 N.Y.S.2d 933, 934 (1984). *See generally People v. Wise*, 25 Cal.App.4th 339, 30 Cal.Rptr.2d 413, 416–18 (1994).

Applying this rule to the present case, we conclude that the arctic entry must be considered part of the "premises" referred to in the search warrant. The arctic entry in this case was an enclosed vestibule or small porch, attached to the residence, with its own door. When Davis, Fox, and Thronsen entered the arctic entry, they were "on the premises" of the residence named in the search warrant. For this reason, the three appellants fell within the scope of the warrant (and were subject to search) before the police ever invited or brought them through the interior front door into the main living area of the house.

■ Davis and Fox additionally argue that, because they arrived at the residence after the police, the warrant did not authorize the police to search them. Davis and Fox rely on the wording of the warrant, which authorized the police to search any persons on the premises "at the time of service of the search warrant". They assert that this language limited the police to searching the people who were there when the police arrived.

For some purposes, one might need to distinguish between the act of "serving" a search warrant (an act that occurs at a particular instant) and the act of "executing" the warrant (that is, the ensuing search of the premises, which might take hours). However, we do not believe that this distinction is useful for construing the scope of the search authorized by the warrant in this case.

In the present case, the magistrate found probable cause to believe that the residence at 1550 Old Pioneer Way was being used as a "crack house"—a commercial establishment devoted to the distribution of crack cocaine. The magistrate also found that a person's presence at the house established probable cause to search them. (The appellants do not dispute this finding.)

The probable cause for the search of Davis's and Fox's persons depended on their voluntary presence at the site of an ongoing criminal enterprise. We do not see how this probable cause was diminished by the fact that Davis and Fox arrived after the police, but while the police were still executing the warrant. Professor LaFave notes this issue in his treatise on the law of search and seizure:

> [C]ourts ... have allowed persons who enter during the execution [of a warrant] to be searched for the items named in the search warrant.... [W]here the search warrant is not for one specific object (e.g., a stolen diamond ring) but rather for a type of goods (e.g., narcotics [or] gambling paraphernalia) which are likely present because of ongoing criminal activity involving such goods, there is no inherent inconsistency in asserting that the person entering during the search may have the described goods on his person.

Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (3rd ed. 1996), § 4.9(c), Vol. 2, p. 633 (footnotes omitted); *see id.* nn. 33–34.

The Alaska Supreme Court has consistently followed a "common sense approach ... to problems presented by search and seizure". *State v. Morris,* 668 P.2d 857, 864 n. 2 (Alaska App.1983) (Singleton, J., concurring). Application of common sense to this case leads us to conclude that the magistrate authorized the police to search people who arrived while the police were searching the house.

In sum: The warrant issued in this case was not an improper "general warrant", the three appellants were on the premises of the residence being searched, and the fact that Davis and Fox arrived after the police did not affect the probable cause for the searches of their persons. The judgements of the superior court are AFFIRMED.