Senior Judge COATS, dissenting.
This case begins with the police obtaining a warrant to search the Northwood Drive residence for William Young. The police had reliable information that Young was a high-end methamphetamine dealer who dealt in large quantities of the drug and that he was present at the Northwood Drive residence.[1]
The police served the warrant just after midnight on February 9, 2013. The police found Young hiding in the residence. No one else was present.[2] The police searched Young incident to the arrest. They found a large amount of cash in his pocket. And they found *123 a pipe which was located near Young which field-tested positive for methamphetamine.
In a protective sweep of the house, the police discovered "numerous flat screen televisions and items of value. Linked to the flat screen televisions were numerous surveillance cameras." Every exterior door to the house was a barred security door. The exterior of the house was "surrounded by motion detecting flood lights."
In the application for the warrant, the police indicated that individuals who deal with drugs usually have large quantities of cash and unreported income. Consequently drug dealers go to great lengths, such as the police observed in the Northwood Drive residence, to protect their illegal business. The many valuable items which the police observed were also consistent with the illegal business.
It appears to me that the information presented to the issuing judge established that the Northwood residence was the location of a major drug selling operation.
The issuing judge issued the warrant at 3:11 a.m. and allowed the search to take place "immediately." The magistrate authorized the police to search "[a]ny person on the premises at the time of service of the search warrant, for purposes of checking for the possession, sale or distribution of controlled substances and further for the purposes of identification."[3]
During the search, at approximately 3:30 a.m., Osborne arrived at the Northwood Drive residence, knocked on the door, and explained that he was looking for "Bill." It appears to me that Osborne was clearly covered by the warrant under the circumstances and that the police were authorized to search Osborne under the warrant.
As I understand the opinion of the Court, the Court is concerned that the warrant might be overbroad-that the warrant would authorize the police to search completely innocent people who had no connection with the drug operation. But I think that this concern is limited in this case. First, when the police arrested Young, it was just after midnight and no one was present in the house. The police would have secured the house while they were obtaining the warrant. And, from the police observations, it appears that anyone who had spent any time in the house would recognize that this was not an ordinary residence. Between the extraordinary surveillance and the numerous valuable items of property that were present in the house it would have been apparent that this house was the scene of illegal activity.
But this residence did not appear to be the usual retail drug-selling operation which is described in the cases the Court relied upon.[4] In those kinds of cases, a regular stream of retail customers is going into the house at all hours of the day and night to obtain drugs. And that is the kind of evidence that the police present to magistrates to obtain a search warrant for that kind of a retail drug operation. If the police get a warrant, then they go into the residence. And it would be reasonable to expect that the stream of people attempting to buy drugs would continue if the police did nothing to announce their presence within the residence.
But the case before us is an entirely different kind of case. In this case the residence was basically a fort where William Young stored drugs and valuable property that he did not want to put at risk. Unlike the cases cited in the Court's opinion, in this case the police had already been inside the residence-to *124 arrest Young-before applying for the second warrant. The evidence the police found supported the inference that Young was protecting his property, and would not want anyone to approach this residence. Anyone approaching the residence and knocking on the door would be someone involved in the wholesale operation or perhaps obtaining drugs to sell as part of a retail operation, rather than a retail customer.
To protect his drug operation, Young would have realized that anyone approaching the house might see something suspicious and thus, he would have to treat anyone approaching the house as a threat. He would probably not have had residential mail or package delivery for that reason. Therefore it does not appear that there was any reasonable risk of arresting family members who were not involved in the drug trade or other innocent bystanders. In particular, it seems unlikely that a mail carrier, a UPS driver, or any other innocent person would be approaching the house, much less knocking on the door. The fact that the search was initiated a little after 3:00 a.m. would also limit the risk of an innocent bystander being searched. It therefore seems unlikely that anyone not involved in the drug operation would be approaching this house.
In addition, in the unlikely event that someone did approach the house and knock on the door, I think we can credit the police with having enough sense to not search someone who knocked on the door unless there were suspicious circumstances. Finally, it seems unlikely that the police would search a mail carrier or a Girl Scout. On the other hand, someone knocking at the door at 3:30 a.m. and asking for the drug dealer the police had just arrested would be "on the premises" and covered by the warrant. Davis v. State , 938 P.2d 1076, 1078-79 (Alaska App. 1997) (people knocking on the door of a drug house which is being searched by the police are considered to be "on the premises" for purposes of the search warrant).
In State v. Koen , 152 P.3d 1148, 1151 (Alaska 2007), the Alaska Supreme Court directed courts reviewing the issuance of a search warrant to give "great deference" to a magistrate's decision to issue a search warrant:
[In determining whether there is probable cause for a magistrate's decision to issue a search warrant] we begin by recognizing that magistrates have broad latitude to draw reasonable inferences from the evidence placed before them. Accordingly, we give "great deference" to the magistrate's discretion and resolve marginal cases in keeping with the traditional preference accorded to warrants. (Citations omitted.)
The supreme court recognized that warrants are issued under emergency circumstances and that the police and magistrates operate under different circumstances than an appellate court does. The court recognized that a reviewing court should encourage the use of warrants and police should be able to rely on them. Under the facts of this case, I see little risk of abuse based on the circumstances set out in this warrant. I accordingly dissent.

The warrant for the arrest of William Young was issued by the Fairbanks district court a short time before his arrest and almost certainly included this information. But even without this earlier warrant, we can infer that, since this earlier warrant authorized the police to break into his residence at midnight, Young was a significant drug dealer. To the extent there was any doubt about this, the amount of security at the residence and the valuable property stored within the residence supported the inference that Young was a major drug dealer and that this residence was a secured warehouse for a major drug operation.

It is reasonable to infer that no one besides Young was in the residence when the police entered and arrested him just after midnight. If someone had been present in the residence, it would have been an important omission for the police to not reveal this to the magistrate when they were obtaining the second warrant to search the residence. Given the level of security at the residence and the large amount of valuable property stored in the residence, it was reasonable to infer that anyone else "on the premises" would be connected to the drug operation.

The opinion of the court suggests that the police should have focused more on the possibility that a confederate might show up during the search. But that possibility was not the focus of the warrant. So it is understandable that the police would not go into great detail when they were requesting authority to search "all persons on the premises." I believe under the rule of law that requires us to interpret warrants generously, we should assume that the police knew what they were asking for when they put this request in the warrant. Similarly, we are to assume that the district court judge knew what was in the warrant when he issued it. With the benefit of hindsight, briefing, and time, an appellate court can easily think of how a warrant could have been better drafted. But the law requires us to give "great deference" to a magistrate's decision to issue a warrant.

See, e.g. , Commonwealth v. Smith , 370 Mass. 335, 348 N.E.2d 101, 107 (1976), cert. denied , 429 U.S. 944, 97 S.Ct. 364, 50 L.Ed.2d 314 (1976).