## MARY SALMON *v.* STATE OF MARYLAND

[No. 299, Initial Term, 1967.]

514

*Decided December 6, 1967.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Milton B. Allen* for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *James B. Dudley, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant was convicted of violating the lottery laws on October 13, 1966 by Judge Joseph L. Carter, sitting without a jury in the Criminal Court of Baltimore. She was sentenced to not more than one year in the Maryland State Correctional

Institution for Women and fined $1,000.00. Her sole contention on this appeal is that lottery paraphernalia taken from her person at the time of her arrest, and introduced in evidence over objection at her trial, was illegally seized.

The evidence adduced at the trial showed that Baltimore City police officers, having probable cause to believe that the lottery laws were being violated, obtained a search warrant for the basement premises at 666 W. Saratoga Street, known as Mary's Hand Laundry, by which they were commanded:

"* * *(a) to enter and search the said premises, (b) to search the person and clothing of the said previously named or described person(s), (c) to search all other persons who may be participating in said criminal activities and (d) to arrest all persons, including the previously named or described person(s), who may be participating in the said criminal activities; and seize all paraphernalia used in or incident to the operation or conduct of said criminal activities; and seize any evidence that pertains to said criminal activities; * * *."

George Annis was the only person on the premises when police entered to execute the warrant. He told the officers that he was "presently in charge of the premises because Miss Salmon (appellant) was out of the premises." Searching the premises, the officers found a number of nonconventional lottery slips and a lottery cutcard in the handle of an electric iron which was located on a table behind the counter. The officers also found a number of lottery slips in Annis's coat, which was hanging up on a rack in the laundry. A "hit calendar" was observed on a clothing sorting table behind the store counter, which showed winning numbers covering the period from January 1 to June 3, 1966. As the search progressed, the appellant entered the premises, and asked the officers, all of whom were wearing plainclothes, as to what they were doing "in her laundry," stating that she was the owner. When the officers showed appellant the search warrant, she immediately left the premises and walked about five feet along the street before the officers stopped her and asked her to return to the laundry. Although

she was hysterical, upset and otherwise "a little reluctant" to return to the laundry, she nevertheless did so at the urging of the police, and an unidentified friend, at which time the officers searched her pocketbook and therein discovered a lottery tape, representing lottery play in the amount of $237.00. This evidence was seized and introduced at the trial over appellant's objection.

Appellant contends that the seizure of the lottery paraphernalia from her person was unlawful because (1) she was not named or described in the warrant; (2) she was not on the premises, at least voluntarily, when the search of her person was made, and (3) she was not participating in any criminal activity on the premises. She further contends that even if she had committed a misdemeanor in the presence of police, the search of her person was illegal, since it preceded rather than followed her arrest and hence was not incident thereto. During oral argument of the case, appellant's counsel stated that underlying her first three contentions, and implicit therein, was the more basic contention that the search warant was unconstitutionally invalid as being a general warrant, since it authorized search of persons neither named nor described in the warrant, whether on or off the premises authorized to be searched. We find no merit in any of these arguments.

Article 26 of the Maryland Declaration of Rights provides:

> "That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

The Fourth Amendment to the Federal Constitution, now applicable to the states through the Fourteenth Amendment (*Stanford v. Texas,* 379 U. S. 476; *Mapp v. Ohio,* 367 U. S. 643) provides as follows:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

518

searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

While Article 26 antedates the Fourth Amendment by a number of years, both grew out of the same historical background, having as a part of their common purpose to proscribe unrestricted searches and seizures by general warrant[1] and thus to safeguard the privacy and security of individuals against unwarranted intrusions and arbitrary invasions by governmental officials. See *Camara v. Municipal Court,* 387 U. S. 523, 18 L. Ed. 2d 930; *Schmerber v. California,* 384 U. S. 757; *Frank v. Maryland,* 359 U. S. 360; *Givner v. State,* 210 Md. 484; *Bland v. State,* 197 Md. 546.

That the Maryland search warrant statute, Code, Article 27, Section 551, is in full compliance with these constitutional provisions cannot be doubted. The statute provides, in part, for the issuance of search warrants on proper oath or affirmation where probable cause exists "to believe that any misdemeanor or felony is being committed by any individual or in any building, apartment, premises, place or thing * * * or that any property subject to seizure under the criminal laws of the State is situated or located on the person of any such individual or in or on any such building, apartment, premises, place or thing." It is upon the basis of such probable cause that the statute authorizes a *search* of "such suspected individual, building, apartment, premises, place or thing," and a *seizure* of "any property found liable to seizure under the criminal laws of this State." In view of the federal and state constitutional provisions relating to searches and seizures, and prohibiting general or blanket-type warrants, the statute prohibits the issuance of any warrant unless it shall "name or describe, with reasonable particularity, the individual,

---

1. General warrants fail to sufficiently specify the place or person to be searched or the things to be seized. See particularly Lasson, *History and Development of the Fourth Amendment to the United States Constitution,* 1937, Note 3 at page 77.

building, apartment, premise, place or thing to be searched," together with, *inter alia,* the "grounds for the search."

It is thus clear from the provisions of the statute that what it, in effect, authorizes is a *search* of persons, places or things, as reasonably particularized in the warrant, for specifically designated property, unlawfully obtained or held, or of evidence of the commission of the crime, now including items relating thereto which are purely evidentiary in nature.[2] As the search warrant is issued for the basic purpose of making a search, the probable cause necessary to support its issuance requires a proper showing not only that a crime has been or is being committed, but also that the evidence of the crime is upon the person or within the place or thing to be searched. *Camara v. Municipal Court, supra; Jones v. United States,* 362 U. S. 257; *Gattus v. State,* 204 Md. 589, 597; *People v. Montanaro,* 229 N. Y. S. 2d 677. It is likewise clear that while a search warrant is issued only for the purpose of making a search, and thus does not operate as an arrest warrant, nevertheless that where a directive to make an arrest is included as one of the commands of the warrant, such directive is a conditional one— valid only if the search reveals the commission of an offense, in which event the arrest is for the offense revealed by the search.[3] *Henson v. State,* 236 Md. 518, at page 525; *Gattus v. State, supra; People v. Perez,* 229 N. Y. S. 2d 882; Varon, *Searches, Seizures and Immunities,* Volume 1, at pages 218, 380-381.

It is against this background that we consider the effect of the long-standing practice in Baltimore City of including a command in the warrant—as was here done—not only to search the designated premises and persons named or described in the warrant, but also to "search all other persons who may be participating in said criminal activities," and "to arrest all

---

2. See *Warden v. Hayden,* 385 U. S. 926.

3. In *Gattus,* the court observed that the ancient practice of including within a search warrant a direction to make an arrest stems from the Statute of 22 Geo. 3, c. 58, which, in connection with the issuance of search warrants for stolen goods, commanded that the person in whose possession such goods were found was deemed guilty of a misdemeanor and was to be forthwith brought before the justice of the peace to answer the charge.

persons * * * who may be participating in the said criminal activities." It is, in effect, appellant's contention that since the warrant authorized the search and arrest of persons neither specifically named or particularly described therein, no matter where found, that the warrant is a general one and, as such, violative of the state and federal constitutions. The same argument was raised and rejected in *Griffin v. State,* 232 Md. 389 —a case which involved, as here, a search warrant in a lottery case and contained the identical commands as those now attacked. In that case, the court flatly held. that the inclusion of such provisions did not render the warrant objectionable on constitutional grounds, stating at page 393:

> "* * * The provisions objected to are no more than a directive to the police to perform duties that they should perform in the absence of any command in the warrant to that effect; namely, that in the execution of a search warrant they should arrest all persons committing misdemeanors in their presence, and, after a valid arrest, they may search the arrestee as an incident thereto and seize any relevant evidence that pertains to the criminal activities of said arrestee."

To like effect, see *Scott v. State,* 1 Md. App. 481, at page 486.

It is thus clear that the challenged commands of the warrant do not undertake to authorize the arrest and search of all persons found on premises for which a search warrant has been issued, but only those who, though not named or described in the warrant, are committing a crime in the presence of the officers.[4] But even if it was the purpose of the command to authorize such a search, and thus to include persons on the premises as to whom no probable cause to search was shown,

---

4. Officers armed with a search warrant for particular premises are obviously not authorized to search all persons found therein. See *United States v. Di Re,* 332 U. S. 581, 587; *Saunders v. State,* 199 Md. 568, 574; *United States v. Festa,* 192 F. Supp. 160 (D. Mass.); *State v. Jokosh,* 193 N. W. 976 (Wis.); *Purkey v. Mabey,* 193 P. 79 (Idaho); *Cornelius on Searches and Seizures,* Sections 145, 199; Varon, *Searches, Seizures and Immunities,* Volume 1, at pp. 383-384.

this would not invalidate the warrant *in toto* because the statute does not so provide, and invalid general words therein are separable from the valid provisions, and may be treated as mere surplusage. *Dow v. State,* 207 Md. 80, 84; *Gattus v. State, supra,* at page 596. Cf. *Crossland v. State,* 266 P. 2d 649 (Okla.). In any event, it is abundantly clear that the command of the search warrant to arrest and search all persons participating in the criminal activities would not support a search of one on the premises who had not committed a crime in the presence of the searching officers. In *De Angelo v. State,* 199 Md. 48, a search warrant was issued based upon probable cause to believe that a lottery was being conducted at a designated dwelling. The warrant commanded the officers to search for lottery tickets and other paraphernalia used in the unlawful operations, and also to search one "Chickie" and "all other persons who may be found participating in said lottery." The police, executing the warrant, discovered lottery tickets, after which appellant entered the house. Although admittedly he was not committing a misdemeanor in the presence of the searching officers, he was nevertheless searched by the police, and the evidence of lottery found on his person was introduced at his trial. The court held that the search was unlawful since there was nothing to show that appellant was participating in the lottery merely by reason of his entering the premises under search after the presence of lottery tickets had been discovered.

Unlike *De Angelo,* where officers observe a crime committed in their presence while lawfully on premises for which they have a search warrant, they may, of course, arrest and search such an offender. See *Marron v. United States,* 275 U. S. 192; *Delnegro v. State,* 198 Md. 80; *Lambert v. State,* 196 Md. 57; *Smith v. State,* 191 Md. 329; *People v. Perrez, supra; United States v. Festa, supra.*

The real inquiry then is whether appellant, when arrested, was participating in the unlawful lottery activity discovered by the search, *viz.,* was she committing a misdemeanor in the presence of the officers for which an arrest could be made, and a search of her person undertaken incident thereto. It is well settled that an officer may arrest without an arrest warrant a

person who commits a misdemeanor in his presence. In *Robinson v. State,* 229 Md. 503, 507, it was held that the term "presence" is a word of art, denoting that the commission of a misdemeanor is perceptible to the officer's senses, whether they be visual, auditory, or olfactory. As stated in *Davids v. State,* 208 Md. 377, a crime is committed in the presence of an officer where his senses afford him knowledge that such is the fact; and that where some evidence of a commission of a misdemeanor reaches an officer through his senses, and it is augmented by other strongly persuasive facts in his possession, all of which is sufficient to convey virtual knowledge to any normal mind that the misdemeanor is then being committed, the officer may act upon such information as being tantamount to actual knowledge that the misdemeanor is being committed in his presence.

· We think that the facts and circumstances were clearly such that the officers, in arresting the appellant, could reasonably believe that a misdemeanor—unlawful possession of lottery slips—was being committed by the appellant in their presence. That the police had probable cause to suspect that the premises were being used in connection with unlawful lottery activity so as to justify issuance of a search warrant therefor is not contested by appellant. A search conducted by authority of the warrant uncovered lottery slips secreted within an ironing appliance located behind the store counter—an area not open to the general public. Appellant's entrance upon the premises as the search was in progress, together with her admission of ownership, coupled with her flight upon being told that the officers had a search warrant for the premises, reasonably supports the inference that she was a possessor of lottery slips found on the ironing table.

In *Robinson v. State, supra,* the court recognized that the defendant's flight from the police may be evidence of guilt, citing *Tasco v. State,* 223 Md. 503 and *Price v. State,* 227 Md. 28, but there declared the arrest invalid because that evidence was not "of guilt of any particular offense which the officers had reason to believe, from the evidence of any of their senses, had been or was being committed in their presence." *Robinson* at page 510. Here, however, appellant's flight, under the cir-

cumstances, could reasonably be viewed as evidence of guilt of a particular crime, namely possession of the lottery slips which had immediately theretofore been discovered on the premises by the arresting officers. Accordingly, appellant's arrest was grounded upon the reasonable belief that she was committing a misdemeanor in their presence and the search of her person incident to such arrest was not improper. Compare *Gatewood v. State,* 244 Md. 609 and *Moore v. State,* 199 Md. 676.

While we think appellant's arrest was made prior to the search of her person, nevertheless even if not made before, it would not, under the facts of this case, render inadmissible the evidence then found on her person. See *Gaudio and Bucci v. State,* 1 Md. App. 455, at pages 464-465.

> *Judgment affirmed—Costs to be paid by appellant.*