STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ALEX DE SIMONE, DEFENDANT-RESPONDENT.

Argued January 25, 1972 — Decided March 27, 1972.

Mr. R. Benjamin Cohen, Assistant Prosecutor, argued the cause for appellant (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).

Mr. Norman Fischbein argued the cause for respondent.

The opinion of the court was delivered by

WEINTRAUB, C. J. Defendant, whose guilt is plain, insists his conviction for possession of lottery slips must be upset because, he claims, the proof was illegally obtained. The evidence was acquired by a search of his person under a warrant directing a search of a specifically described automobile "and all persons found therein." Defendant was a passenger in the car. The trial court denied the motion to suppress. The Appellate Division reversed the conviction, holding there was no basis for a warrant for a search of passengers notwithstanding the existence of a basis for a search of the automobile. One judge dissented, saying that although "all persons found therein" was not sufficiently descriptive to satisfy the Fourth Amendment, he would remand the matter to determine whether, apart from the warrant, the officer reasonably believed defendant was participating in the criminal affair at the time of the search. The State appealed to us as of right. *R.* 2:2–1(a).

The majority of the Appellate Division cited *State v. Masco,* 103 *N. J. Super.* 277 (App. Div. 1968). There the search warrant issued on a showing of probable cause that horse race bets were being taken by an unknown man in a one-family dwelling. The warrant directed a search, for gambling paraphernalia, of the dwelling "and the person of those found within" it. The search of the individual found on the premises was sustained as incidental to a valid arrest based upon probable cause the officer found at the scene, but the warrant was thought to be invalid insofar as it authorized a search of persons found on the premises. The basis of that view was not a lack of probable cause but rather that the warrant was a "general" warrant because it did not describe the persons to be searched with the specificity required by the Fourth Amendment.

On principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend upon the facts. A showing that lottery slips are sold in a department store or an industrial plant obvi-

ously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense. Such a setting furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them.

■■■ As to probable cause, it must be remembered that the showing need not equal a *prima facie* case required to sustain a conviction. No more is demanded than a well-grounded suspicion or belief that an offense is taking place and the individual is party to it. *State v. Burnett,* 42 *N. J.* 377, 386–388 (1964) ; *State v. Davis,* 50 *N. J.* 16, 23–24 (1967). And, with regard to the Fourth Amendment demand for specificity as to the subject to be searched, there is none of the vice of a general warrant if the individual is thus identified by physical nexus to the on-going criminal event itself. In such a setting, the officer executing the warrant has neither the authority nor the opportunity to search everywhere for anyone violating a law. So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment. The evil of the general warrant is thereby negated. To insist nonetheless that the individual be otherwise described when circumstances will not permit it, would simply deny government a needed power to deal with crime, without advancing the interest the Amendment was meant to serve.

■ And, of course, in this connection an automobile is different from a dwelling. To begin with, the power to search must be equal to the distinctive threat of this mobile instrumentality of crime. *State v. Boykins,* 50 *N. J.* 73

(1967). Further, presence in an automobile is more apt to suggest complicity in the illegal use to which the car is then being put than would be presence in a building in which some illegality may be occurring. While some innocent person could happen to call upon the occupant of such real property, it is unlikely that a driver of a car pursuing a criminal venture would take with him someone not involved who could be a witness against him. It would be surprising if a passenger just happened to be in an automobile en route to commit a holdup. Conceivably that could be, but probable cause is not dissipated by some distant possibility. We repeat that the question is not whether the circumstances would be enough to take a case against the passenger to the jury; we are speaking only of a basis for a search.

█ And it is well to note that the real issue is whether the truth revealed by the search shall be suppressed and a false judgment of not guilty entered. Although not so limited in its application, the suppression rule was invented to deter insolence in office. See *State v. Bisaccia,* 58 *N. J.* 586 (1971); *State v. Kasabucki,* 52 *N. J.* 110 (1968). Needless to say there is no official arrogance when the officers place the facts before a magistrate for his view rather than search and seize upon their own assessment of the factual pattern when it accrues. Since it furthers the constitutional purpose to encourage applications to a magistrate, we should take a view of the problem which will make that course feasible.

█ Upon the facts of the present case the search warrant is, in our view, unassailable. The affidavits revealed that following a tip from the F. B. I. the local authorities learned by their investigation that a lottery operation was using a parked, unattended automobile as a "drop" for pickup men in a lottery operation. By evident prearrangement, other vehicles came in quick succession, stopping near that car, the drivers then dropping brown paper bags into it. Some pickup men approached the parked vehicle on foot and made like deposits. One pickup man deposited manila en-

velopes. The registrations of the vehicles were checked. One vehicle, a brown Cadillac with plates MAX 676, was registered in the name of Wilson D'Alessandro, who had prior convictions for possession of lottery slips while driving a lottery pickup car. Two other individuals were known to the police as lottery pickup drivers.

Six warrants were obtained to search six automobiles observed in that operation. The affidavits described each by make, color, and registration plates. One was for D'Alessandro's Cadillac just mentioned. The warrants were to be executed within ten days. They were not, because it developed that the appointed place for rendezvous was changed daily to different intersections within the city. Upon that additional showing, new warrants issued. The officers located the parked receiving automobile and caught the other vehicles in a nearby trap. One was D'Alessandro's car which he was driving. As to his car, the warrant directed a search of "Motor vehicle, Reg. MAX 676, and persons found therein." The defendant, De Simone, was a passenger. He was searched. On him were a manila envelope with lottery slips and additional slips rolled and held by a rubber band. The envelope bore the mark "T–19," which, in the opinion of an officer expert in these matters, represented a designation assigned by the syndicate to a lottery writer. It was the evidence thus obtained from defendant that convicted him.[1]

The Fourth Amendment prohibits searches only if they are unreasonable. We see nothing unreasonable about the search here made. The affidavits predicted a rendezvous constituting a part of a criminal operation in which six cars, precisely described, were used. The driver of each of course had to be involved. We think it reasonable to con-

---

[1]Defendant's testimony, irrelevant upon the issue before us, was quite absurd. He said D'Alessandro stopped to offer him a lift; that as defendant approached the car, he saw the envelope and the rolled papers in the street; that thinking they might contain money, he picked them up and placed them in his back trouser pocket and was surprised when the search revealed the content.

clude also that a passenger in the car was probably a party, and this for two reasons. First, a driver would not likely bring or be permitted to bring an uninvolved person who would witness the deposit of such articles in an unattended car and perhaps also the deposit of like objects by the others who were expected to converge at the appointed time. The second reason is that during the surveillance some of the pickup men had been observed to come on foot, and hence it would not be surprising, depending on the location for a particular day, that a pickup man would be given a lift. Hence we are satisfied there was ample basis for a well-grounded suspicion or belief that every person in a car at the time of the "drop" would be involved in the illicit operation. This is so notwithstanding that the affidavits for the warrants made no mention of passengers.

It is true that on the face of the warrant a search could have been made of a passenger at a time when the automobile was not actually used in pursuit of the criminal venture, for the warrant itself did not undertake to predict the precise time or place of the rendezvous. But that criticism would be strained and hypertechnical and indifferent to the common sense of the situation. Obviously it would have defeated the purpose of the warrant if the search were made other than at the rendezvous. The affidavits portrayed a floating "drop," the inability to predict precisely what would be the next location in a large city, and hence the need to detect the location on some day and to corral the cars and the persons in them as they arrived at the appointed place. The plain intent was that the search be made while the offenders repeated the observed procedure. A warrant must be read realistically in the light of the proof upon which it was issued. So read, there was no appreciable probability that the officers would search the car and its occupants when the car was not committed to the phase of the illegal operation described in the affidavits. A warrant may not be condemned upon some hypothetical set of facts, foreign to the evident intent of the officers who sought the

warrant and the magistrate who issued it. See *State v. Bisaccia, supra,* 58 *N. J.* at 592–593.

Hence, upon principle, the case does not seem difficult. The question is whether binding authority goes the other way. The case most heavily relied upon is *United States v. Di Re,* 332 *U. S.* 581, 68 S. Ct. 222, 92 *L. Ed.* 210 (1948). There the officers did not have a search warrant. An informer had told them he expected to buy counterfeit gasoline ration coupons from one Buttitta at a named place. When the officers approached Buttitta's car, Buttitta was in the driver's seat, with defendant Di Re alongside him. The informer was in the rear seat holding some coupons. When the officers asked the informer from whom he had obtained them, he named Buttitta but did not name Di Re, a fact the Court found to be of moment. A search of Di Re revealed a quantity of counterfeit coupons. It was held there was no probable cause for the search of Di Re. The Court stressed that the transfer of a ration coupon would not itself suggest illegality; that since the transfer was made on a public street in daytime, there would be no reason for Di Re to suspect illegality if he was aware of the transfer and hence his presence in the car was not enough to suggest involvement. Unlike the case at hand, it did not appear that the automobile was an instrumentality of the criminal operation, and apparently the car itself was not searched. The Court said (322 *U. S.* at 593, 68 S. Ct. at 228, 92 *L. Ed.* at 219–220):

An inference of participation in conspiracy does not seem to be sustained by the facts peculiar to this case. The argument that one who 'accompanies a criminal to a crime rendezvous' cannot be assumed to be a bystander, forceful enough in some circumstances, is far-fetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passersby, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal. If Di Re had witnessed the passing of papers from hand to hand, it would not follow that he knew they were ration coupons, and if he saw that they were ration coupons, it would not follow that he would know them to be counterfeit.

The decision thus turned on "the facts peculiar to this case." Accordingly *Di Re* did not hold that there cannot be probable cause to believe a passenger in a car is involved in a criminal venture. On the contrary, *Di Re* recognized the answer must turn upon the facts, and, as we have already said, we think the facts before us amply reveal probable cause.[2]

 There are not many reported cases involving a warrant to search unnamed persons present at a specified place. We think it correct to say that overall they are consistent with the thesis we stated above, that is, that the warrant is sufficient or not, depending upon whether there is probable cause to believe persons present are involved in the criminal event.

Thus a warrant to search for liquor was held to be a general warrant and therefore invalid as to persons present when the place was a cafe at which some 25 to 30 persons were eating and some 10 or 12 were employed. *Crossland v. State,* 266 *P.* 2d 649 (Okl. Crim. App. 1954). The same holding was made where the warrant for liquor directed the search of all persons and all vehicles on premises used as a filling station and beer tavern. *Garrett v. State,* 270 *P.* 2d 1101 (Okl. Crim. App. 1954). So also, it was held a warrant for liquor could not direct the search of all persons in a poolroom and hence a gun found on one of them was illegally seized. *State v. Massie,* 95 *W. Va.* 233, 120 *S. E.* 514 (Sup. Ct. App. 1923). See also *United States v. Festa,* 192 *F. Supp.* 160 (D. Mass. 1960), involving a search for gambling paraphernalia of all persons present in a bargain shoe store, and also *Purkey v. Mabey,* 33 *Idaho* 281, 193 *P.* 79 (1920), involving a liquor offense and a search of patrons in a cigar store, in both of which cases, although it is not clear the warrant authorized the search of persons

---

[2]Since *Di Re* did not involve a search warrant, the Court did not have or deal with the question whether a warrant to search "persons present" would lack the specificity required by the Fourth Amendment.

present, it was held the patrons could not be searched in the absence of probable cause to believe they were involved in the offense to which the warrants were addressed.[3]

On the other hand, a search of a person pursuant to such a warrant has been sustained where from the nature of the described criminal activity there was probable cause to believe the persons present would be involved in that activity. It was so held as to persons in an apartment in which drugs were being sold and used, *Willis v. State,* 122 *Ga. App.* 455, 177 *S. E.* 2d 487, 489 (Ct. App. 1970); in a building where a gambling operation was conducted, *Samuel v. State,* 222 *So.* 2d 3 (Fla. Sup. Ct. 1969); in an apartment in which there were "pot" parties, *Johnson v. State,* 440 *S. W.* 2d 308 (Tex. Cr. App. 1969); in the first floor of specified premises where a dice game was operated, *People v. Nicoletti,* 60 *N. Y. Misc.* 2d 108, 302 *N. Y. S.* 2d 618 (Co. Ct. 1969).

Such a search was also upheld in *State v. Pugh,* 69 *Ill.* App. 2d 312, 217 *N. E.* 2d 557 (Ct. App. 1966), where the scene was an apartment in which narcotics were sold. The court referred to an Illinois statute which premits the search of any person present, either to protect the officer from attack or to prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant. Reference too should be made to a Connecticut statute which in connection with gambling authorizes the search of persons present if the officer executing the warrant finds probable cause for the search. The statute was held to codify existing law in *State v. Procce,* 5 *Conn. Cir.* 637, 260 *A.* 2d 413 (App. Div. 1969), where the search of a person in

---

[3]For cases in which the warrant was silent as to persons present and in which it was found that mere presence would not justify the search, see *State v. Bradbury,* 109 N. H. 105, 243 *A.* 2d 302 (1968), where the search was for marijuana in a college dormitory room; *State v. Carufel,* 263 *A.* 2d 686 (R. I. Sup. Ct. 1970) (marijuana), and *State v. Fox,* 283 Minn. 176, 168 *N. W.* 2d 260 (1969) (stolen articles), in both of which the scene was an apartment.

charge of the specified store at the time of the raid was sustained.[4]

We are accordingly satisfied that the warrant before us to search any person in the specified automobile was based upon probable cause to believe such person, whether driver or passenger, would be involved in the criminal operation, and that presence in the car at the place of the criminal rendezvous satisfied the requirement for specificity in the Fourth Amendment. The warrant justified the search and seizure here involved. The trial court correctly denied the motion to suppress.

Hence it is not necessary to remand the case for hearing as to whether, wholly apart from the warrant, the officers had probable cause to arrest defendant and to search him as an incident of the arrest. Nor need we consider whether there could be a basis for the search of a person even if there were not a known basis for his arrest. *Cf. State v. Romeo,* 43 *N. J.* 188, 205–206 (1964).

The judgment of the Appellate Division is reversed and the judgment of conviction is affirmed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.

---

[4]In Maryland, warrants authorizing search of "all other persons who may be found participating" in the described offense are held merely to state the rule of law that an arrest may be made for a misdemeanor committed in the presence of an officer. See *Salmon v. State,* 2 *Md. App.* 513, 235 *A.* 2d 758 (Ct. App. 1967). It is not clear whether the warrant itself serves a role on an application to suppress.