738 A.2d 286

Andre SUTTON

v.

STATE of Maryland.

No. 1517, Sept. Term, 1998.

Court of Special Appeals of Maryland.

Sept. 29, 1999.

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Patricia Jessamy, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before THIEME, ADKINS and JAMES S. GETTY (Retired, Specially Assigned), JJ.

THIEME, Judge.

Appellant was found guilty by a jury in the Circuit Court for Baltimore City of possession of cocaine and related offenses. The offenses were merged, and appellant was sentenced as a second offender to ten years of imprisonment without parole. This appeal followed and presents the following questions:

1. Did the trial court err in denying the appellant's motion to suppress?
2. Did the State fail to establish that the appellant could be sentenced as a subsequent offender?

We answer "no" to both of these questions.

## Facts

On March 21, 1997, officers of the Baltimore City Police Department executed a search and seizure warrant at 2955

Clifton Avenue in Baltimore. Officer Chris Chevron testified that after the door to the residence was kicked in he went to the second floor. There, he discovered appellant Andre Sutton "sitting on the toilet in the bathroom with his clothing down around his knees."

Officers handcuffed Sutton and pulled his pants up. They then conducted a "quick cursory search of the Defendant's person ... for weapons only," and did not find any weapons at that time. The police recovered $1,760.00 in currency from Sutton's left pants pocket.[1] Sutton told the police that he had worked for this money. As Officer Chevron continued to search the second floor, he located in the front bedroom "various empty packag[es] used for controlled and dangerous substances, in addition to a small revolver silver in color with black tape around the handle." In addition, testimony at trial revealed that documents with Sutton's name thereon and a "one dollar bill folded up that contain[ed] a white powder substance" were also found.

Meanwhile, Sutton was taken downstairs, where he was again searched. Inside the crotch area of Sutton's pants, Detective Mike Wilhelm discovered a plastic bag containing 36 zip-lock bags of cocaine.[2]

During the suppression hearing in this case, Sutton was the only person to testify. He admitted that police seized the $1,760.00 in currency from his pants pocket, and maintained that he worked for and saved that money. Sutton testified that the cocaine was not found on his person, but that the police "showed" him a plastic bag (containing cocaine) and

---

1. At trial, Detective Mike Wilhelm testified that he recovered this money from Sutton after Sutton was brought downstairs to the first floor. During the suppression hearing, Sutton testified that the money was recovered from him when police searched him outside of the bathroom on the second floor of the residence. Sutton was the only person to testify at the hearing.

2. We are bewildered as to how the police overlooked this evidence when they raised Sutton's pants after discovering him in the bathroom. This seeming impossibility was not raised or explained at the hearing or during trial.

"said this is yours." Sutton's suppression motion was denied. A jury subsequently found Sutton guilty of possession of cocaine base with the intent to distribute it and possession of cocaine base.

## Discussion

### I. Standard of Review

In reviewing the denial of a motion to suppress, this Court looks to the facts adduced at the suppression hearing which are most favorable to the State as the prevailing party. *In Re: Patrick Y,* 124 Md.App. 604, 608–09, 723 A.2d 523 (1999). "In determining whether the denial of a motion to suppress ... is correct, the appellate court looks to the record of the suppression hearing, and does not consider the record of the trial itself." *Trusty v. State,* 308 Md. 658, 670, 521 A.2d 749 (1987). In considering that evidence, great deference is extended to the fact-finding of the suppression hearing judge with respect to weighing credibility and determining first-level facts. When conflicting evidence is presented, this Court accepts the facts found by the hearing judge, unless clearly erroneous. *See Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990); *Perkins v. State,* 83 Md.App. 341, 346–47, 574 A.2d 356 (1990).

"When the question is whether a constitutional right ... has been violated, we make our own independent constitutional appraisal. We make the appraisal by reviewing the law and applying it to the peculiar facts of the particular case." *Riddick,* 319 Md. at 183, 571 A.2d 1239; *see also Gamble v. State,* 318 Md. 120, 128, 567 A.2d 95 (1989); *State v. Wilson,* 279 Md. 189, 202, 367 A.2d 1223 (1977); *West v. State,* 124 Md.App. 147, 155, 720 A.2d 1253 (1998); *Walker v. State,* 12 Md.App. 684, 695, 280 A.2d 260 (1971).

### II. Suppression Hearing

The suppression hearing in this case was appallingly devoid of substance. While we are relatively certain that the hearing involved a motion to suppress, at no point before, during, or at

the conclusion of the hearing did either party or the judge identify the specific evidence sought to be suppressed. The scant testimony presented at the hearing established that money and drugs were seized, but the court's findings and conclusions do not provide this Court with insight as to which evidence the court's ruling addressed. Thus, we are left to our own devices to discern from a Spartan record whether the denial of the general "motion to suppress" was proper.[3]

The parties stipulated that the police had a search warrant when they entered the premises. In addition, Sutton did not contest the propriety of the search of the premises or the seizure of any evidence therein.[4] Thus, the sole question before the court during the suppression hearing was whether the police lawfully searched and seized evidence from Sutton's person.

Although no mention was made as to what evidence Sutton wanted suppressed, we give him the benefit of the doubt that he wanted the court to suppress all evidence seized by police during the challenged search. Sutton's testimony established that two types of evidence were seized: money and drugs.

---

3. Although we refer to a "motion to suppress," we note that such a motion was never actually made to the court. Defense counsel raised a general objection to the search and seizure warrant, to which the judge responded, "Why don't we, since the hour is late today, you want to knock that out? We can do it by way of a suppression hearing now?" Defense counsel stated: "Okay." Shortly thereafter, defense counsel advised his *client,* "You understand, we're having now a motion to suppress, do you understand that?" During closing arguments, neither the State nor defense counsel referred to suppressing evidence; rather, the arguments focused on the propriety of the search and the search warrant. At the conclusion of the hearing, the trial judge stated, "I'm not inclined to grant the motion. The motion is denied."

4. As to the search of the premises, defense counsel conceded prior to the hearing: "[C]ertainly there's no standing as far as a search and seizure warrant of the house is concerned...." In addition, counsel admitted that "[t]here is a warrant for the house, my client, I don't believe that he has any standing anyway. He doesn't live there. And I've reviewed it and it looks like there's probable cause." At the conclusion of the hearing, counsel stated that "he [the defendant] has standing to object to the search of his person, not the rest of the house, but of him."

The prosecutor provided further details in her questions on cross-examination: $1,760.00 and 36 zip-lock bags containing cocaine were seized. As will become pellucid throughout this opinion, the State presented no warrant or witnesses and introduced no evidence; only the defendant testified at the hearing.

### III. Motion to Suppress as to the Cocaine

First, we address the court's denial of the motion to suppress as to the cocaine. Sutton testified that the cocaine was not his, and was not seized from his person. Specifically, defense counsel asked Sutton whether he was "ever confronted with any drugs" during the encounter with police. Sutton responded that "one officer like just came out of his pocket with some—with a plastic bag and showed [it] to me and said this is yours. I said, no, that's not mine's, and before I could say that, he banged me in my mouth...." The state presented no witnesses or evidence to contradict Sutton.[5] Therefore, the only testimony at the hearing established that the *cocaine was not seized from the defendant's person.* Considering the evidence in the light most favorable to the State, we infer that the cocaine was discovered and seized elsewhere on the premises. As we discussed, the defendant did not contest the search of the premises. Therefore, the cocaine was not properly the subject of the suppression motion, *which was limited to the search of his person.* Accordingly, the cocaine should not have been suppressed, as there was no motion before the court to suppress items seized from a search of the premises.[6]

---

**5.** The court did not make any explicit credibility determinations, presumably because no testimony or other evidence contradicted Sutton. To the extent that the court discredited Sutton by surmising what the State's evidence would have been, had it presented any, we find that such a determination would be an abuse of discretion. (The court stated, "I'm presuming that the testimony of the State's witnesses will be to the contrary.") We will assume, however, that the court did not credit and rely on this imaginary testimony in denying the motion to suppress.

**6.** On appeal, appellant couches his argument in terms of "the motion to suppress the fruits of the search." As we have discussed, Sutton's

We find that the denial of the motion to suppress as to the cocaine was proper.[7]

### IV. Motion to Suppress as to the Money

■ Next, we address the court's denial of the motion to suppress as to the money discovered on Sutton's person. We will defer to the court's findings of fact unless clearly erroneous. At the conclusion of the suppression hearing, the court held:

> Well, I believe that under the circumstances, the police had the right to enter the bathroom to find out whether CDS was being destroyed and upon finding someone there, to search them.
>
> Now, I don't have any evidence before me that they found anything when they searched him, because the only evidence I have before me is your client's testimony that they didn't find anything. I'm presuming that the testimony of the State's witnesses will be to the contrary. But, under those circumstances, I'm not inclined to grant the motion. The motion is denied.

The court did recognize that "the only evidence" it had before it was Sutton's testimony. The court's only factual finding, that there was no evidence before it that the police "found anything when they searched" Sutton, was clearly erroneous, however, as to the money. Indeed, the *only* evidence before the court at the hearing, *which came from the defendant himself,* established just the opposite. Sutton admitted that the police found and seized money ($1,760.00) from his pants pocket, which he maintained was the only evidence the police discovered and/or seized from his person as a result of conducting the search. Accordingly, we will not defer to the trial court's erroneous factual finding.

---

testimony that the cocaine was not on his person established that the cocaine was not a fruit of the search.

**7.** For the purposes of this appeal, we do not consider whether the cocaine could have been kept out of evidence on other evidentiary grounds at trial.

We are thus left to consider the legal arguments made by counsel regarding the validity of the search warrant. Because the question here is whether Sutton's constitutional rights were violated, our task is to "make our own independent constitutional appraisal" by "reviewing the law and applying it to the peculiar facts of the particular case." *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990). We find ourselves in a predicament similar to that of the Court of Appeals in *Wiggins v. State,* 315 Md. 232, 250 n. 8, 554 A.2d 356 (1989): "our independent constitutional appraisal of the trial judge's denial of the motion to suppress ... is drastically hindered by the woeful inadequacy of the record of the hearing on the motion. A thorough winnowing of the transcript of the hearing produces mainly chaff and very little seed." Indeed, "[a]s we undertake our independent constitutional appraisal, we note initially the dearth of any findings of first-level fact, fact finding of the type to which we would ordinarily extend great deference." *Perkins,* 83 Md.App. at 347, 574 A.2d 356 (1990).

At the hearing, the State contended that the warrant was broad, as it authorized a search of "any persons and property located in" the premises. Defense counsel argued that the search of Sutton's person was improper because the warrant was *narrow;* it only authorized police to search the listed premises and, "if [in the] execution of this warrant, there are found persons and they are engaged in the commission of a crime, [to] arrest those so participating."

On appeal, appellant asserts the *opposite* argument: the search warrant amounted to a "general warrant," which is "constitutionally prohibited." This is in line with the *State's* contention at the suppression hearing, that the warrant authorized a search of "any person" found in the premises.[8] It was

---

**8.** Neither the State nor appellant appears to have recognized the significance of this distinction at the hearing. Rather, each casually referred to the language of the warrant during closing argument, apparently oblivious to the fact that the language related by the parties contained crucial differences. Because the arguments raised by counsel were not merely alternative interpretations of the same language, these differences amounted to more than just semantics. We simply

this directive that the appellant claims, on appeal, to be a general warrant. As we discuss below, general warrants are unconstitutional because they are overly broad and thus violate the Fourth Amendment's particularity requirement.[9]

The starting point for our analysis would ordinarily be to examine the language of the warrant to determine whether it authorized a search of premises only or a search of "any persons and property located in" the premises. Unfortunately, in keeping with the general theme of this case, the warrant was inexplicably not introduced into evidence. Nor was the affidavit for the warrant. Nor was the application for the warrant. Thus, we are asked to review the trial court's findings with respect to the propriety of a search warrant, which turns on the *specific language* used, even though we do not know what the warrant said. Clearly, without the ability to review the warrant or even testimony as to its language, such a review is simply impossible.

We will, however, briefly discuss the potential analyses that could have resolved these issues at the suppression hearing to provide guidance for subsequent hearings with similar circum-

---

note that the parties' nonchalant recitations of the warrant's language reveal a difference that could have been dispositive on this issue at the hearing.

9. Because appellant did not make a "general warrant" argument below (and instead argued the opposite), the argument does not appear to be preserved for appeal. However, one interpretation of defense counsel's argument at the hearing is that he was actually reciting the underlying requirements for a general warrant to be valid: that there be probable cause to believe that all persons present in the place to be searched are connected with the criminal activity. If that was the case, appellant's arguments at the hearing and on appeal are consistent and the general warrant argument is preserved.

We note that this does not appear to be what defense counsel at the hearing was arguing, as he only indicated that the police could *arrest*, not search, persons committing a crime on the premises (which in any event police do not need a warrant to do). Such an argument has little to do with general warrants, which focus on searches. The probable interpretation of defense counsel's comment is that he failed to raise the "general warrant" issue at all, even though the State's recital of the warrant's language raised the ultimate "red flag." Nevertheless, we will address the issue in the interest of completeness.

stances. We note at the outset that regardless of whether appellant contends that the warrant was too broad or too specific, and regardless of whether the money should have been suppressed, we find that any error was harmless beyond a reasonable doubt, as it was merely cumulative evidence in light of the 36 bags of cocaine that were not subject to the suppression motion. *See Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976).

 A "general" warrant, also referred to as an "open ended" or "all persons present" warrant, violates the Fourth Amendment directive that "no Warrants shall issue, but upon probable cause ... and particularly describing the place to be searched, and the persons or things to be seized." *See, e.g., Salmon v. State*, 2 Md.App. 513, 235 A.2d 758 (1967). Appellant's reliance on *Ybarra v. Illinois*, 444 U.S. 85, 92 n. 4, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), to support his contention that the warrant in this case was an unconstitutional general warrant is misplaced. The warrant in *Ybarra* authorized the search of a tavern and its bartender for drugs and made no mention of other patrons present. Thus, the Court refused to uphold the search of Ybarra and other patrons, noting that the warrant did not authorize such a search. The Court *specifically excluded* situations such as the one in this case from its analysis, however, and "seemed to indicate there is no inherent defect in [an 'all persons' warrant] if issued on sufficient grounds." 2 W. LaFave, *Search & Seizure*, § 4.5(e) at 547 n.129 (1996); *see also State v. Kinney*, 83 Ohio St.3d 85, 91, 698 N.E.2d 49, 54 (1998); *People v. Johnson*, 805 P.2d 1156, 1159 (Colo.App.1990). Indeed, the Court left open the possibility that a warrant authorizing the search of unnamed persons in a named place would be constitutional if there was "probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs." *Ybarra*, 444 U.S. at 92 n. 4, 100 S.Ct. 338, 62 L.Ed.2d 238.

In *Frey v. State*, 3 Md.App. 38, 46, 237 A.2d 774 (1968), this Court said, through Chief Judge Robert C. Murphy:

A general warrant, broadly defined, is one which fails to sufficiently specify the place or person to be searched or the things to be seized, and is illegal since, in effect, it authorizes a random or blanket search in the discretion of the police in violation of the Fourth Amendment to the Federal Constitution, Article 26 of the Maryland Declaration of Rights, and Section 551 of Article 27 of the Maryland Code (1967 Repl.Vol.), all of which require that search warrants particularly describe the place to be searched and the things to be seized, so as to prevent the search of one place, or the seizure of one thing, under a warrant authorizing search of another place, or the seizure of another thing.

*Id.* at 46, 237 A.2d 774 (citing *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965); *Salmon,* 2 Md.App. 513, 235 A.2d 758).

Maryland recognizes the general invalidity of overly broad search warrants, but has not yet explicitly ruled on the validity of "all persons present" clauses in search warrants. Although several cases in Maryland involve "all persons" clauses in search warrants, those cases do not address the issue presented in this case. Instead, the "all persons" language is qualified by a directive to police to search all persons discovered in the place to be searched *who are participating in criminal activity on the premises. See, e.g., Tucker v. State,* 244 Md. 488, 224 A.2d 111 (1966); *Griffin v. State,* 232 Md. 389, 194 A.2d 80 (1963); *Iannone v. State,* 10 Md.App. 81, 267 A.2d 812 (1970); *Salmon v. State,* 2 Md.App. 513, 235 A.2d 758 (1967). Unlike the issue in this case, police in those cases were not given a "general" directive to search "all persons" found at the named location. As our discussion will make clear, this distinction is significant.

The only Maryland case that is relatively on point is *Haley v. State,* 7 Md.App. 18, 253 A.2d 424 (1969), in which this Court considered a search warrant authorizing police to "search the body or bodies of any person or persons found" within the described premises. However, *Haley* was decided in reliance on *Salmon, supra,* where the search warrant at issue authorized police to search "those who, though not

named or described in the warrant, are committing a crime in the presence of the officers." *Salmon,* 2 Md.App. at 520, 235 A.2d 758. This was not the language of the warrant at issue in *Haley,* nor is it the language of the warrant in the case *sub judice.* Thus, Maryland has not squarely addressed the issue before us in this case, and certainly has not done so in recent years.

The prevailing view in other jurisdictions is that such warrants are not *per se* unconstitutional so long as there exists a "sufficient nexus among the criminal activity, the place of the activity, and the persons in the place to establish probable cause." [10] *People v. Johnson,* 805 P.2d 1156, 1159 (Colo.Ct. App.1990); *see also State v. DeSimone,* 60 N.J. 319, 288 A.2d 849 (1972).

In *State v. DeSimone,* which contains one of the first discussions of this issue, the Supreme Court of New Jersey considered a warrant issued to search a described car and "all persons found therein" for gambling paraphernalia. 60 N.J. 319, 288 A.2d 849. The court determined that "[o]n principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend upon the facts." 60 N.J. at 321, 288 A.2d 849. The court upheld the warrant, stating:

[W]ith regard to the Fourth Amendment demand for specificity as to the subject to be searched, there is none of the vice of a general warrant if the individual is thus identified by physical nexus to the on-going criminal event itself. . . . So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment. The evil of the general warrant is thereby negated. To insist nonetheless that the individual be otherwise described when circumstances will not permit it, would simply deny govern-

---

**10.** Although we undertake a cursory survey of other jurisdictions' views on the validity of "all persons" warrants, we do not purport to settle the issue for Maryland in this case.

ment a needed power to deal with crime, without advancing the interest the Amendment was meant to serve.

*DeSimone,* 60 N.J. 319, 322, 288 A.2d 849 (1972).

"Most of the decisions either upholding or striking down particular warrants of the *DeSimone* variety conform, at least in terms of the result reached, to the analysis of that case." 2 W. LaFave, *Search & Seizure,* § 4.5(e) at 547–48. According to LaFave, "[u]nquestionably, the *DeSimone* rationale is correct." *Id.* at 546. LaFave further clarifies the issue as follows:

> [T]he question is whether there is sufficient particularity in the probable cause sense, that is, whether the information supplied the magistrate supports the conclusion that it is probable anyone in the described place when the warrant is executed is involved in the criminal activity in such a way as to have evidence thereof on his person. If the evidence tendered to the magistrate supports such a conclusion, then the search-all-persons-present warrant is unobjectionable.

*Id.* at 547.

Our review of cases in other jurisdictions reveals that courts are more likely to uphold warrants authorizing the search of premises and all persons present when the place to be searched is a *private residence* and when police have probable cause to believe that drug dealing activity is taking place therein.[11] *See, e.g., Morton v. Virginia,* 16 Va.App. 946, 434 S.E.2d 890 (1993) (information in search warrant affidavit regarding drug use and distribution in apartment justified search of all persons present when warrant was executed); *Commonwealth v. Graciani,* 381 Pa.Super. 626, 554 A.2d 560 (1989) (a sufficient nexus existed between suspected distribution of cocaine, private residence, and persons to be searched

---

11. In *State v. Kinney,* the Supreme Court of Ohio pointed out that "a search for illegal drugs is more likely to support a search of all persons than a search for evidence of many other crimes." 83 Ohio St.3d 85, 91, 698 N.E.2d 49 (1998). Thus, cases involving a "drug trafficking residence" differ from other cases, as "probable cause would not likely support the search of all persons on a premises if police were looking for stolen objects that were not easily concealed or transported." *Id.*

to justify warrant authorizing search of all persons present at residence); *Commonwealth v. Heidelberg,* 369 Pa.Super. 398, 535 A.2d 611 (1987) (warrant to search all persons present at defendant's apartment was supported by probable cause to believe that anyone at the residence on the night in question would be involved in illegal drug-related activities); *Commonwealth v. Smith,* 370 Mass. 335, 348 N.E.2d 101 (1976) (search warrant for apartment and "any person present" was valid, as informant's information was that occupants were selling drugs and that there was a regular traffic of persons entering to make purchases); *People v. Easterbrook,* 43 App.Div.2d 719, 350 N.Y.S.2d 442 (1973), *aff'd,* 35 N.Y.2d 913, 364 N.Y.S.2d 899, 324 N.E.2d 367 (1974) (where affidavit supporting warrant alleged that heroin was used and sold in an apartment, criminal activity was of such a nature and the premises so limited that it was likely everyone present was party to the offense).

Indeed, courts seem to recognize that an " 'all persons' search of a dwelling is far less likely to entrap the innocent than one of a public or semi-public establishment." *State v. Doyle,* 918 P.2d 141, 143 (Utah Ct.App.1996). "Clearly, probable cause will more likely exist to support the search of all persons within a private residence than it will for a search of all persons in a place open to the public.... Accordingly, courts have tended to follow the rule, 'The more public a place, the less likely a search of all persons will be sustained.' " *Kinney,* 83 Ohio St.3d at 91, 698 N.E.2d 49 (citing 1 Ringel, *Searches & Seizures,* Arrests and Confessions (1988) 5–48, Section 5.6(e)). Thus, when the "all persons" warrant involves the search of a public place, such as a bar or a gas station, courts have generally not found probable cause to believe that all persons present in the establishment are involved in the criminal activity. *See, e.g., State v. Robinson,* 371 N.W.2d 624 (Minn.Ct.App.1985) (warrant authorizing drug search of a legally-operating bar and all persons present therein, executed during normal operating hours when fifty to eighty patrons were present, was struck down); *State v. Sims,* 75 N.J. 337, 382 A.2d 638 (1978) (warrant authorizing search of service

station and all persons found there void as to search of persons); *State v. Riggins*, 138 N.J.Super. 497, 351 A.2d 406 (1976) (warrant authorizing search of all persons present in a public tavern was void as a general warrant as to patron searched); *Wilson v. State*, 136 Ga.App. 70, 221 S.E.2d 62 (1975) (search warrant for bar and "all persons on the premises" void as a general warrant and did not allow search of customer at bar); *People v. Nieves*, 36 N.Y.2d 396, 369 N.Y.S.2d 50, 330 N.E.2d 26 (1975) (search warrant for bar and restaurant authorizing the search of a named person and any other person within was invalid as to the unnamed persons).

■ If the warrant in this case was a general warrant, its validity as to the search of Sutton's person would depend on whether, when the warrant was *issued*, there was probable cause to believe that all persons present would be connected with the criminal activity. The place to be searched was a private residence; the reason for the search was suspected drug dealing activity. During closing argument at the hearing, the State informed the court that "pre-raid observations" were conducted in this case after "confidential informants ... indicated that this premises was being used to store large amounts of cocaine." The officer who conducted the surveillance did not testify until trial, at which time he gave a brief account of his observations.

■ Had the State called a witness or presented evidence at the suppression hearing, the court may have found a sufficient "nexus" between the residence, the persons found therein, and the criminal activity to uphold the warrant. As we have indicated, we can barely discern what argument defense counsel made at the suppression hearing regarding the warrant. Similarly, we are uncertain as to the court's holding in light of the general warrant issue. The court appears to have found that probable cause existed at the time the police *discovered* Sutton, but did not determine whether probable cause existed when the magistrate *issued* the warrant. The latter is the appropriate analysis when assessing

the validity of a general warrant.[12] Because our discussion regarding the warrant at this point is purely academic, we will not reach a conclusion as to whether the court's findings were proper.[13]

At the risk of delving even further into this analytical nightmare, we will briefly address appellant's "other" contention at the suppression hearing, that the search was illegal because the warrant only authorized police to search persons present in the residence "if [in the] execution of this warrant, there are found persons and they are engaged in the commission of a crime." Again, this argument directly hinges on the language of the warrant, which is not in the record. We note that police officers do not need a warrant to authorize them to arrest persons committing a crime in their presence. If such language was included in the warrant, the question would be whether the police had probable cause to believe that Sutton was committing a crime when they discovered him in the second floor bathroom. At the conclusion of the suppression hearing, the court found that "under the circumstances, the police had the right to enter the bathroom to find out whether CDS was being destroyed and upon finding someone there, to search them." [14] As we mentioned in the previous analysis, the court appears to have found that there was probable cause to believe Sutton was committing a crime when he was discovered.

---

12. Given that defense counsel did not appear to be asserting a "general warrant" argument, as we have discussed, the court's failure to address that issue is quite understandable.

13. We note in passing that "[w]e fail to perceive how the trial judge could pass upon the validity of the search when neither the warrant nor a completed copy was offered into evidence." *Campofreda v. State*, 15 Md.App. 693, 699, 292 A.2d 703 (1972).

14. The court did not expand on what would have given police the justification to search anyone they found in the bathroom, simply by virtue of "discovering them." Although *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), may justify a frisk for weapons, *Terry* was not raised before the court. Again we note that the only weapon discovered during this encounter was in an upstairs bedroom, not on Sutton's person.

Without any testimony from police or any evidence presented by the State, it is somewhat unclear what facts the court was relying on to determine probable cause. At *trial*, Officer Wilard testified about the surveillance he conducted of the residence prior to obtaining the search warrant. In addition, Officer Chevron testified, based on his "training and expertise," that the response of people in a residence when a search warrant is executed is to "attempt to run," which produces an "accelerated heart rate, heavy breathing, and profuse sweating." Upon discovering Sutton in the upstairs bathroom, Officer Chevron observed that Sutton "was sweating profusely, breathing very heavily, and had an extremely rapid heart rate." Finally, Officer Chevron testified that documents with Sutton's name thereon were discovered in an upstairs bedroom.[15] Because none of this testimony was before the court at the hearing, the court seems to have found probable cause simply because police discovered Sutton in a bathroom ("on the toilet . . . with his clothing down around his knees") during the execution of a search and seizure warrant in a drug case. At this time, we decline to pass on whether this determination was proper.

As we stated at the beginning of our discussion regarding the money seized from Sutton, any error regarding the denial of the motion to suppress the money was harmless in light of the 36 bags of cocaine that were not part of the motion to suppress. *Dorsey*, 276 Md. 638, 350 A.2d 665.

### V. Sentencing Appellant as a Subsequent Offender

Appellant's second argument is that the State failed to establish a proper basis for the imposition of a mandatory

---

**15.** These documents were discovered after police found Sutton in the bathroom and searched his person. Because the documents connect Sutton to the residence, it is possible that their discovery would have given police probable cause to arrest Sutton and search him incident to that arrest. In the alternative, the documents might have allowed the State to justify the initial search on a theory of inevitable discovery, as per *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). As no testimony or evidence was presented at the hearing regarding these documents, these arguments are pure conjecture.

sentence. We disagree.[16]

At sentencing, the State sought to have Sutton sentenced as a subsequent offender, subject to a mandatory minimum of 10 years imprisonment, pursuant to Article 27, Section 286(c)(1) of the Maryland Code. For a defendant to be sentenced as a subsequent offender, the State must give the defendant notice of its intent to seek the mandatory minimum penalty [17] and, "at sentencing, 'the burden is on the State to prove, by competent evidence and beyond a reasonable doubt, the existence of all of the statutory conditions precedent for the imposition of enhanced punishment.[']" *Beverly v. State,* 349 Md. 106, 707 A.2d 91 (1998) (citing *Jones v. State,* 324 Md. 32, 37, 595 A.2d 463 (1991)); *see also Ford v. State,* 73 Md.App. 391, 402–403, 534 A.2d 992 (1988); *Sullivan v. State,* 29 Md.App. 622, 631, 349 A.2d 663 (1976). Thus, "[t]he burden ... to prove the existence of prior convictions ... rests with the State to prove [them] beyond a reasonable doubt." *Beverly,* 349 Md. at 124, 707 A.2d 91.

We note first that defense counsel at the hearing did not object to the imposition of the mandatory minimum sentence to the extent ordinarily required to preserve issues for our review. Even though counsel made several incomplete statements to the court that seem to relate to the State's

---

**16.** In a move that can only be described as "the pot calling the kettle black," appellant boldly asserts that "[a]gain, the State misunderstands the nature of litigation." As the string of embarrassingly poor tactics in this case should have already revealed, both parties substantially contributed to the spectacle we have generously referred to throughout this opinion as a "suppression hearing." Even on appeal, appellant cites *one* case to support his first argument (*Ybarra v. Illinois,* which as we have already discussed did not address the issue before us in this appeal), and *one* case to support his second argument, *Bowman v. State,* which is also quite distinguishable from this case. (In *Bowman,* the Court had to decide whether evidence of a conviction of robbery under the law of the District of Columbia, standing alone, was sufficient to prove that the conviction was for a crime of violence in Maryland under Article 27, Section 643B of the Maryland Code.)

**17.** After initial confusion, it was established that the State filed timely notice of its intent to seek the mandatory minimum penalty. The timeliness and sufficiency of the notice is not an issue in this appeal.

burden to produce competent evidence, counsel never finished his statements or completely articulated his objections.[18] We will not speculate as to what counsel would have asserted had he concluded his argument. Regardless, this Court has held that "'when the court has allegedly imposed a sentence not permitted by law, the issue should ordinarily be reviewed on direct appeal even if no objection was made in the trial court.'" *Bowman v. State*, 314 Md. 725, 738 n. 9, 552 A.2d 1303 (1989) (*citing Walczak v. State*, 302 Md. 422, 427, 488 A.2d 949 (1985), Md. Rule 4–345(a)); *see also Ford*, 73 Md. App. at 405, 534 A.2d 992 ("Appellant's failure to raise the issue of whether the State produced sufficient evidence of a prior conviction does not preclude his seeking review by this tribunal."). Therefore, we will address this issue on it merits.

■■■ On appeal, appellant contends that "the State was obligated to produce certified copies of any prior convictions it wished to rely on. The State failed to do this and, therefore, failed to meet its burden of proof." Caselaw in Maryland does not support this contention. In cases where this Court has "found evidence of a prior conviction beyond a reasonable doubt, the State has substantiated that fact with some documentation or overt omission," not necessarily certified copies of convictions. *Ford*, 73 Md.App. at 404, 534 A.2d 992. Indeed, a presentence investigation report given to the defendant's attorney at the hearing is "competent evidence" sufficient to prove "the factual predicate in order to impose enhanced punishment," provided counsel does not object to the

---

18. When the State informed the court of its intention to seek the mandatory minimum penalty, defense counsel stated, "Your Honor, with respect to the mandatory. I think we contested it. I don't think the State has come forward with any kind of evidence to prove one way or the other whether—" Later, defense counsel said, "Your Honor, I think, and I've been involved in these before and generally there is a hearing and somebody comes in and testifies about the prior record to prove it's the same record, and you know, this has been set for months now and nothing—" Maryland Rule 4–323(c) provides that "[f]or purposes of review by the trial court or on appeal of any other ruling or order," a party, at the time the ruling or order is made or sought, must make "known to the court the action that the party desires the court to take or the objection to the action of the court."

accuracy of the record. *See, e.g., Collins v. State,* 89 Md.App. 273, 598 A.2d 8 (1991); *Ford,* 73 Md.App. at 403–404, 534 A.2d 992; *Hall v. State,* 69 Md.App. 37, 63, 516 A.2d 204 (1986).

In this case, the court ordered and later considered a presentence investigation report. At no time did defense counsel make any "allegations [that] shed any doubt upon the accuracy" of the report. *Hall,* 69 Md.App. at 63, 516 A.2d 204. The closest counsel came to objecting to the report was his statement that "[t]he only problem I see is there is [sic] no certified copies of any prior convictions and I think that should be done the right way because I'm sure this guy is going to appeal the case." Immediately prior to this statement, however, defense counsel deferred to the court: "Whatever the [court] wants to do is fine with me." When the court began to impose sentence, the judge stated, "I don't think I have discretion" in light of the mandatory minimum sentence. Rather than objecting or requesting to be heard, defense counsel responded, "All right." Clearly, he did not object at this point, nor did he attempt to conclude or revisit any objection he may have started to make earlier. Thus, we find that counsel's comment regarding certified copies of convictions, which did not allege that the report was in any way inaccurate, did not amount to an objection.[19] Instead, his comment was framed, at most, as a procedural consideration for appeal.

Moreover, in *Beard v. State,* 216 Md. 302, 308–313, 140 A.2d 672, *cert. denied,* 358 U.S. 846, 79 S.Ct. 72, 3 L.Ed.2d 81 (1958), the Court of Appeals found that "a judicial admission could serve as proof of prior convictions necessary for enhanced punishment under the law and procedures then in effect." *See also Bowman,* 314 Md. at 734, 552 A.2d 1303; *King v. State,* 300 Md. 218, 227, 477 A.2d 768 (1984). This Court in *Hall* determined that reviewing and accepting a

---

**19.** Even if counsel was requesting that certified copies of Sutton's convictions be produced by the State, our discussion demonstrates that his implied contention that such documentation was required, in the absence of a challenge to the accuracy of the presentence report, was legally incorrect.

presentence investigation report was "tantamount to a judicial admission." *Hall,* 69 Md.App. at 63, 516 A.2d 204.

In this case, instead of objecting to the report's accuracy, defense counsel appeared to have read the report and agreed with its contents. At the beginning of sentencing, counsel said that he "reviewed the presentence report[,] . . . knew what was going to be in there to begin with" and knew that Sutton "has a prior record." Defense counsel further stated, "I know he's got a history of being involved, but he does appear to, for the most part, lead a law-abiding, satisfactory life." Finally, counsel said, "I would submit on the PSI, Your Honor. I don't think I say [sic] any more than what's set forth there. . . ."[20]

It is not necessary for us to determine conclusively whether defense counsel's statements amounted to a judicial admission.[21] We find that the unchallenged presentence investigation report was sufficient in itself to sustain the State's burden of proving appellant's prior conviction beyond a reasonable doubt. " 'Whenever the statutory requirements are met and the requisite notice given, a trial court must impose

---

**20.** Appellant argues on appeal that "the defendant made it clear that he did not accept the presentence investigation conclusion as to the predicate conviction." Appellant consistently refers to defense counsel as "the defense" throughout his brief. We therefore assume that by referring to "the defendant," appellant refers to Sutton, himself, as he spoke to the court at sentencing. Our review of Sutton's remarks to the court reveals that he *never addressed* the predicate convictions. Instead, he protested the jury's guilty verdict in *this* case only. Therefore, we find no merit in appellant's contention that Sutton made it clear that he did not accept the presentence investigation conclusion as to the predicate conviction.

**21.** We note that in *Hall*, the defendant himself read and acknowledged the accuracy of the presentence report. In the case *sub judice*, defense counsel read and "submit[ted] on the PSI." Moreover, defense counsel never challenged the accuracy of the report. The record does not indicate whether Sutton himself read the report, but in his remarks to the court, he raises no concerns about the report or its accuracy. *See* n.20, *supra*. We decline to determine whether and to what extent this distinction is significant, as we do not need to find that counsel's statements amounted to a judicial admission to find that the State met its burden.

the sentence prescribed in the mandatory sentencing statute; it has no discretion to do otherwise.'" *Beverly,* 349 Md. at 124, 707 A.2d 91 (*citing State v. Montgomery,* 334 Md. 20, 21 n. 1, 637 A.2d 1193 n. 1 (1994)). Therefore, we affirm the court's imposition of the mandatory sentence in this case.

## Conclusion

We affirm the court's denial of the motion to suppress, and affirm the court's imposition of the mandatory minimum sentence.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY THE APPELLANT.**